619 So.2d 1076 (1993)
STATE of Louisiana
v.
David TUCKER.
No. 92 KA 0733.
Court of Appeal of Louisiana, First Circuit.
April 23, 1993.
Rehearing Denied June 28, 1993.
William R. Campbell, Jr., New Orleans, Pam Hershey, Asst. Dist. Atty., Covington, for State of La.
Norman J. Robinson, Jr., Slidell, for appellant.
Before EDWARDS, SHORTESS and WHIPPLE, JJ.
SHORTESS, Judge.
David L. Tucker (defendant) was charged by bill of information with molestation of a juvenile, LSA-R.S. 14:81.2. He pled not guilty, and after a jury trial was found guilty as charged. Defendant was sentenced to six years imprisonment at hard labor with credit for time served. This appeal follows.
*1077 Defendant urges nine assignments of error. In addition to numerous evidentiary issues, defendant contends the evidence was insufficient to sustain a conviction. In State v. Hearold, 603 So.2d 731, 734 (La.1992), the Louisiana Supreme Court stated that when issues are raised on appeal both as to sufficiency of the evidence and trial errors, the reviewing court should first determine the sufficiency of the evidence. Defendant contends the trial court improperly allowed the jury to hear inadmissible hearsay testimony. In determining whether the evidence was sufficient to convict, we may consider this alleged hearsay. In Hearold, the court stated: "When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged.... We accordingly proceed first to determine whether the entirety of the evidence, both admissible and inadmissible, was sufficient to support the conviction," 603 So.2d at 734 (emphasis added). See also Lockhart v. Nelson, 488 U.S. 33, 41-42, 109 S.Ct. 285, 291, 102 L.Ed.2d 265 (1988).

FACTS:
On two separate occasions during the summer of 1990, Wanda Tucker (Tucker), defendant's wife, testified she saw defendant touching their three-year-old daughter's vagina. The following testimony was developed at trial. Marie Scott, the victim's baby-sitter, testified she noticed the victim engaged in unusual behavior which she perceived as sexual conduct, such as once seeing the victim "humping" a small boy, and rubbing her vaginal area against her stepbrother's leg; that the victim told her that "Daddy and Papa Wilbur"[1] "tickle[d] her pee-pee"; and that she told Tucker about the incidents and the statement.
Tucker testified that she decided to observe defendant's behavior with their daughter to try to "catch" him; that defendant on one occasion told her he was going to bed and took the victim with him; that she waited a few minutes and then entered the bedroom and saw the victim lying on defendant's stomach with her panties pulled down; that defendant had his hand "buried in between" the victim's legs and "it looked like he had his fingers up in her vagina"; that she later walked in the bathroom while defendant was bathing the victim; that she noticed the victim was lying on her back in the bathtub with her legs open, in two to three inches of water, and defendant had his hand between her legs; that she waited to report the incidents to the authorities because she was not satisfied with the results she had obtained previously when her father raped her son (from another marriage) and, after reporting it, nothing was done; that after she reported the described incidents she left home with the children. Based on Tucker's report of these incidents in September 1990, defendant was arrested and charged.
Dr. Rebecca Russell, a pediatrician who specializes in physical diagnosis of sexual abuse in children, testified she found evidence of old, healed trauma to the victim's hymen which she felt was caused by sexual abuse. She did not express an opinion as to who had perpetrated the abuse.
Judy Laurendine, the victim's therapist and a certified social worker,[2] gave the most damaging testimony against defendant. Laurendine testified that she specialized in the treatment of very young children *1078 who had been sexually abused; that she used anatomically-correct dolls in therapy; that on her second visit with the victim, the victim pointed to the penis of the male doll and stated, "Just like daddy's"; and that in her opinion the victim's behavior was abnormal for a child who had not been abused. Laurendine further testified that the victim told her both her father and Wilbur had sexually abused her; that they inserted their fingers into her vagina and "sometimes it hurted"; that she did not "want to tell [Laurendine] about when he put it in my mouth because that make (sic) me feel bad and I went ag, ag, and I gaged (sic)"; that she "threw up"; that "he put it in my mouth"; and that "he puts it here," demonstrating with the dolls that "he" inserted his penis into her vagina. Laurendine did not state whether the victim indicated if "he" referred to defendant, Wilbur, or both.
Defendant testified that he did not abuse his daughter in any way and that the only time he had touched her vagina was while bathing her or while applying diaper rash ointment. His defense was that his estranged wife (the only witness to testify she saw defendant molest the victim) set him up out of vindictiveness because he told her he wanted a divorce. In this regard, defendant produced many witnesses, including his wife's own mother, Ann Heinig. Heinig came from Georgia to testify that Tucker was a liar and was known to have taken drugs. She listed a number of men, including Tucker's own father, whom Tucker had accused of sexual misconduct toward her and her children.

SUFFICIENCY:
When reviewing a claim of insufficient evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Smith, 600 So.2d 1319, 1324 (La.1992). In this case, a rational trier of fact could have concluded beyond a reasonable doubt, considering all the evidence admitted, that defendant sexually abused his daughter. In fact, the admissible eyewitness testimony of Tucker alone would have been sufficient to convict; while the facts to which Tucker testified were disputed by defendant, the credibility of the witnesses was a determination to be made by the jury. Defendant is not entitled to an acquittal based on insufficiency of the evidence, but he may be entitled to a reversal of the conviction and remand for a new trial if he can prove prejudicial trial error. If the hearsay statements of which he complains were inadmissible and not harmless error, the conviction must be reversed and a new trial ordered. See Hearold, 603 So.2d at 737.

HEARSAY:
Defendant alleges in assignment of error no. 1 that the trial court committed error when it permitted hearsay evidence. Specifically, defendant contends the testimony of Tucker, Scott, and Laurendine relating what was told to them by the victim was hearsay. Defendant argues this testimony was impermissible under the Louisiana Code of Evidence.
Tucker testified that on two separate occasions she saw defendant improperly touching the victim. This testimony is not hearsay because Tucker was testifying as to what she actually saw.[3] Scott testified the victim told her, after prompting by her 12-year-old stepbrother, that "Daddy and Papa Wilbur" "tickle[d] her pee-pee." This testimony was hearsay, but defendant failed to object at trial.[4]
*1079 Defendant did object to the testimony of Laurendine regarding disclosures made to her by the victim. These statements were clearly hearsay and were thus inadmissible. La.Code Evid. arts. 801(C) and 802. They were admitted for the truth of the matter asserted, and the jury had no opportunity to evaluate the credibility of the victim as she did not testify. We thus must determine whether the introduction of these hearsay statements was harmless error.
In order to establish that error was harmless in this case, the State must prove that the admission of improper hearsay did not contribute to defendant's conviction. Arizona v. Fulminante, 499 U.S. 279, ___, 111 S.Ct. 1246, 1257, 113 L.Ed.2d 302 (1991); State v. Smith, 600 So.2d at 1326. In Yates v. Evatt, ___ U.S. ___, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991), which involved an improper jury instruction regarding a legal presumption, the United States Supreme Court explained:
To say that an error did not contribute to the verdict is, rather, to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed by the record....
Before reaching such a judgment, a court must take two quite distinct steps. First, it must ask what evidence the jury actually considered in reaching its verdict....
Once a court has made the first enquiry into the evidence considered by the jury, it must then weigh the probative force of that evidence as against the probative force of the presumption standing alone.... [I]t will not be enough that the jury considered evidence from which it could have come to the verdict without reliance on the presumption.... Since that enquiry cannot be a subjective one into the jurors' minds, a court must approach it by asking whether the force of the evidence presumably considered by the jury in accordance with the instructions is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the presumption. It is only when the effect of the presumption is comparatively minimal to this degree that it can be said ... that the presumption did not contribute to the verdict rendered.
Yates, ___ U.S. at ___-___, 111 S.Ct. at 1893-1894.
Was the hearsay testimony of Laurendine unimportant in relation to everything else the jury considered? Applying the Supreme Court's directive, we must look to the evidence before the jury. The evidence shows defendant was able to counter much of the evidence against him. The prosecution presented the eyewitness testimony of Tucker that she twice saw defendant touching the victim's vagina. However, defendant denied he ever touched the victim in a sexual manner and presented witnesses, including Tucker's own mother, who testified Tucker was untruthful and prone to accuse males of sexual misconduct. Scott testified she saw the victim engaging in behavior which she perceived as sexual conduct, such as putting her hand in her panties when she laid down for a nap, but defendant elicited testimony that the victim suffered from diaper rash and may have been scratching.
Much of the remaining testimony could as easily have shown the abuse was inflicted by Wilbur or some other person rather than defendant.[5] Tucker testified that she initially suspected Wilbur had abused the victim and that the victim told her Wilbur had abused her. Scott's hearsay testimony that the victim told her that her "pee-pee" had been "tickled" implicated both defendant and Wilbur. Dr. Russell had no opinion as to who had caused the old damage to the victim's hymen. Finally, Laurendine testified that the victim's conduct with the anatomically-correct dolls indicated sexual abuse, but without the hearsay testimony *1080 she could not have ventured an opinion as to the identity of the abuser.
The evidence presented to the jury, without the hearsay testimony, fell into two categories: (1) evidence of sexual molestation by Wilbur or an unidentified abuser; and (2) evidence by the prosecution that was directly contradicted or explained by defendant. While the jury could have decided the prosecution's witnesses were more credible, it is not enough to sustain the conviction that the jury considered evidence from which it could have convicted defendant without reliance on the improperly admitted hearsay. Rather, the issue is whether the jury actually rested its verdict on properly admitted evidence, independently of the improper hearsay. The admission of Laurendine's hearsay testimony is harmless only if its effect is comparatively minimal so that it can be said it did not contribute to the verdict rendered. See Yates, ___ U.S. at ___-___, 111 S.Ct. at 1893-1894.
The hearsay testimony of Laurendine, an independent witness, was damning to defendant. She told the jury, through poignant quotes from the victim, that defendant had subjected the victim to oral and vaginal intercourse as well as digital manipulation. While the verdict could have been the same without this evidence, we find the State failed to prove beyond a reasonable doubt that Laurendine's hearsay testimony did not contribute to the jury's finding of guilt. We thus must reverse defendant's conviction, vacate his sentence, and remand this case to the district court for a new trial. State v. Smith, 600 So.2d at 1327-1328.[6]
CONVICTION REVERSED; SENTENCE VACATED; REMANDED FOR NEW TRIAL.
NOTES
[1] Defendant and Tucker separated when the victim was 18 months old, and defendant was awarded custody of the child. He and the victim moved in with his friend Wilbur and Wilbur's wife. Tucker testified that when, during visitation with the victim, she first noticed her "acting out sexually," she suspected Wilbur or his sister-in-law Linda had been molesting her. She based these suspicions on her knowledge that Wilbur had been imprisoned for raping his cousin's seven-year-old daughter and that Linda, who was baby-sitting the victim, was bisexual. Tucker stated she reconciled with defendant because of her suspicions about abuse of the victim by Wilbur and his relations.
[2] Georgianne Sheheehy was the first social worker to see the victim and saw her a total of ten times from about September 1990 through December 10, 1990, on a weekly basis. Thereafter, on December 13, 1990, Laurendine began seeing the victim in therapy and was still seeing the victim at the time of trial. Unfortunately, Sheheehy did not testify.
[3] Tucker also testified without objection that the victim told her "my papa," which Tucker explained referred to Wilbur, tickled her. Tucker testified the victim demonstrated the tickling by rubbing her vagina.
[4] Additionally, the statement to Scott may have qualified as the first report of sexually assaultive behavior. However, Louisiana Code of Evidence article 801(D)(1)(d) provides that such a statement is not hearsay if:

[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is: ... [c]onsistent with the declarant's testimony and is one of initial complaint of sexually assaultive behavior.
The victim did not testify.
[5] The record also shows startling testimony from Scott concerning Tucker's 12-year-old son (who lived with Tucker and was the victim's stepbrother); she testified she found the stepbrother in a closed room at her house performing oral sex on her four-year-old son.
[6] Because of our finding on this issue, we pretermit review of defendant's remaining assignments of error. We note, however, that we are quite troubled by defendant's contention he was denied his right to confront his accuser.