hPER CURIAM:
In this prosecution on four counts of indecent behavior with juveniles, La. R.S. 14:81, respondent moved to quash the bills of information because the state had failed to comply with the special time limits provided by La. R.S. 15:171 for trial of child sex abuse cases. On the day of trial, respondent also moved for a continuance after the state acknowledged that it had lost the only copy of a videotaped interview conducted with the four victims by the Iberia Parish Sheriffs Office. The state had fortuitously preserved an audiotape of that interview and made it available to the defense, but counsel had seen the videotape and argued that a continuance was necessary to give the state additional time to find the original tape. In counsel’s view, the videotape contained important exculpatory evidence because it showed the extent to which the interviewer had used nonverbal cues to suggest the answers given by the young victims. The trial court denied both motions and after a bench trial found respondent guilty as charged on all counts.
On appeal, the Third Circuit reversed respondent’s convictions and sentences on grounds that the trial court had erred in denying the motion to quash. State v. Ste. Marie, 97-168 (La.App. 3rd Cir. 12/17/97), 704 So.2d 430. We granted the state’s application for review, vacated the decision, and remanded the case to the court of appeal for consideration of | ^respondent’s remaining assignments of error. State v. Ste. Marie, 98-1167 (La.12/18/98), 723 So.2d 407. On remand, the Third Circuit reversed again after finding that the trial court had erred in denying the motion for a continuance. State v. Ste. Marie, 97-0168 (La.App. 3 rd Cir. 6/2/99), 741 So.2d 823. The court of appeal concluded that “the State’s late disclosure that the videotape was missing and its delivery of the audiotape to [defense counsel] during the lunch hour on the first day of trial so prejudiced Ste. Marie that he was denied a fair trial.” Ste. Marie, 97-0168 at 12, 741 *317 So.2d at 829. We again granted the state’s application for review because it appeared that the trial court had not abused its discretion in ruling on the motion and once more reverse.
In April of 1995, two children living in respondent’s neighborhood revealed to their parents and siblings sexual misconduct by respondent involving the fondling of their genitals and digital penetration of their vaginas. The incidents took place while the children- were playing games in respondent’s backyard. Two other children, sisters who lived immediately next door to respondent, made similar claims after questioning by their parents. Detective Annette LeBlanc of the Ibéria Parish Sheriffs Office investigated the complaints and on April 25, 1995, videotaped her interviews with the children. Shortly thereafter, and before respondent’s arrest, defense counsel met with assistant district attorneys Glenda Huddleston and Wayne Landry and reviewed the videotape. Defense counsel viewed the tape for a second time when the state played it at a preliminary examination conducted on August 15, 1995, after respondent’s arrest and arraignment on the charges.
In his subsequent omnibus discovery motion, defense counsel did not specifically ask for a copy of the videotape but did make a general request for disclosure of any exculpatory evidence known to the state. In November of 1995, the state responded to the defendant’s discovery request with open-file discovery and |3with written answers 'to some of defense counsel’s questions. In April of the following year, after several continuances of the case and a resetting of the trial date for June 10, 1996, counsel filed a motion to quash under the speedy trial provisions of La. R.S. 15:171 and a motion to compel additional discovery responses from the state. At the initial hearing on the motions conducted by Judge William D. Hunter on May 22, 1996, defense counsel informed the court that with regard to discovery, there was “only one issue” and that it concerned the state’s inability to provide the dates of the offenses with any greater specificity than the broad allegation in its bills of information that the crimes began in 1992 and ended in 1995. Judge Hunter did not rule on either motion but referred matters to the trial judge, the Honorable Anne Simon.
On Thursday, June 6, 1996, with the hearing on the outstanding motions and trial set for the following Monday, defense counsel approached Lori Landry, the assistant district attorney in charge of the case, and asked her for a copy of the videotape. Counsel intended to review the tape with some of his witnesses, including a psychologist, in preparation for trial over the weekend. Because she was unsure that she would use the tape at trial, Landry informed counsel that he was not entitled to a copy of it at that time. In fact, Landry had already discovered that she could not find the tape and had instituted a search for it within the district attorney’s office. At the hearing conducted by Judge Simon on the morning of June 10, 1996, counsel reiterated that his principal concern regarding discovery focused on the vagueness of the dates provided by the state for the offenses. Counsel argued that the videotape might reveal pertinent information narrowing the time frame of the prosecution and suggested, in light of Landry’s admission that she could not find the tape, that the court continue the case to allow additional time for the search. In addition, counsel made plain his belief that, apart from the question of date specificity for |4the crimes, the videotape contained important exculpatory evidence which the state had the duty to preserve and to disclose as it revealed the extent to which Detective Landry had used not only leading questions but also nonverbal gestures to shape the testimony of the victims. Counsel thus deemed the videotape “critical” to respondent’s defense as he had intended to present the testimony of a psychologist to show the critical flaws in the manner in which Detective Landry *318 conducted the interviews and needed the tape to prepare his expert witness over the weekend before trial. The trial eourt denied the continuance on grounds that counsel had had over a year in which to bring the matter to the court’s attention “[a]nd unfortunately that’s not possible [now],...”
The decision whether to grant or deny a motion for a continuance rests within the sound discretion of the trial judge, and a reviewing court will ordinarily not disturb the lower court’s determination absent a clear abuse of discretion and a showing of specific prejudice. State v. Bo-urque, 622 So.2d 198, 224 (La.1993); State v. Champion, 412 So.2d 1048, 1051 (La. 1982). We find no abuse of discretion in this case because counsel had been overly sanguine in his trial preparation when he assumed that, given the state’s disclosure of the tape’s contents to him, both privately in the district attorney’s office, and publicly in open court during the preliminary examination, he had thereby acquired the right to a copy of the tape to use for his own purposes without supervision by the court. La.R.S. 15:440.5(0) specifically provides in this regard that if the state intends to use at trial the videotaped statement by the victim of child sexual abuse, “the defendant may be provided a copy of the videotape if the court determines it necessary to prepare a proper defense.” Even then, “only the attorney and the defendant may be permitted to view the tape and no copies shall be made by any person.” Id.
|fiLa.R.S. 15:440.5(0) thus attempts to balance in this extremely sensitive area the privacy interests of the child victim of sexual abuse with the defendant’s right to present a defense. The statute interposes the court as the ultimate arbiter of whether, and under what conditions, the state may provide copies of the victim(s)’ statements. The state was therefore not free, despite its prior disclosure of the contents, to give counsel a copy of the videotape simply of its own accord or at the request of counsel. In these circumstances, the trial judge had a reasonable basis to fault counsel for his failure to bring the issue to the attention of the court within the course of a year at a time when the court could determine in advance of trial whether any protective order entered would include review of the tape by the defense psychologist as well as defense counsel and respondent. The state had otherwise freely disclosed the content of the videotape and its subsequent loss of the evidence did not constitute a due process violation as defense counsel expressly absolved the prosecution of any bad faith. See Arizona v. Youngblood, 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988) (“[Ujnless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.”).
In addition, while the videotape may have proved useful to the defense, the record fails to indicate that it was a critical piece of evidence without which the court could not fairly resolve the question of respondent’s guilt or innocence and without which the defense could not fairly present the case in a different light. Although Glenda Huddleston testified that she found only the lack of detail problematic and specifically denied stating that the videotaped interviews were the worst she had ever seen because of the leading nature of the questions, defense counsel impeached her with the testimony of assistant district attorney Wayne Landry, who had been present with Huddleston and | ^defense counsel when they viewed the tape together before respondent’s arrest. Landry recalled Huddleston’s remark “that she thought the method of the interview was suggestive to the children, sort of putting words in their mouth.” The audiotape of the interviews conveyed at least something of their general character despite the variable quality of sound, and defense counsel used a portion of the tape to impeach the testimony of one of the *319 victims at trial. Counsel also impeached the victims’ trial testimony with their prior statements to a Cindy Hayes, a therapist who had worked with the girls briefly after they reported the crimes. Moreover, the court’s denial of a continuance had no apparent impact on counsel’s presentation of several character witnesses, respondent’s exculpatory testimony, or expert testimony that the lack of objective medical findings for any of the victims appeared inconsistent with their accounts of repeated digital penetration over the course of two or three years.
More importantly, all four victims made statements to other members of their families about respondent’s inappropriate fondling and digital penetration of their bodies before they were interviewed by Detective LeBlane. Even under the best of circumstances, defense counsel could not have shown with the videotape that the interviews had been so suggestive that they rendered the victims’ testimony wholly unreliable. As the court of appeal observed with regard to the sufficiency of the evidence on one of the counts, the victim had “consistently testified that Ste. Marie touched her private with his finger .... [and] even if the interview conducted by Detective LeBlane was unduly suggestive, Ste. Marie does not argue for purposes of the Jackson [v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ] review that this evidence should not have been admitted or should not be considered.” Ste. Marie, 97-0168 at 9, 741 So.2d at 827.
As revealed by his arguments before Judge Hunter and Judge Simon on his motion to compel, counsel’s principal objee-tive |7during discovery was to narrow the time frame of the crimes to aid preparation of the defense, not to obtain a copy of the videotape to use for his own purposes. Under all of these circumstances, respondent fails to show specific prejudice arising out of the court’s denial of his motive to continue trial for purposes of renewing the search for the missing videotape. Accordingly, the decision of Third Circuit is reversed and this case is once again remanded to the court of appeal for consideration of respondent’s remaining assignments of error.
JUDGMENT REVERSED; CASE REMANDED.