801 So.2d 424 (2001)
STATE of Louisiana
v.
Bradford STE. MARIE.
No. 97-0168.
Court of Appeal of Louisiana, Third Circuit.
April 18, 2001.
*426 Melissa Lutgring Theriot, Laborde & Neuner, Charles Michael Hill, Lafayette, LA, Counsel for Defendant-Appellant, Bradford St. Marie.
J. Phillip Haney, District Attorney, Lori Ann Landry, Assistant District Attorney, New Iberia, LA, Counsel for State of Louisiana.
Court composed of THIBODEAUX, PETERS and SULLIVAN, Judges.
THIBODEAUX, Judge.
This case is before us on remand from the Louisiana Supreme Court. The following is the appellate history of the case as set forth by the supreme court:
On appeal, the Third Circuit reversed respondent's convictions and sentences on grounds that the trial court had erred in denying the motion to quash. State v. *427 Ste. Marie, 97-168 (La.App. 3rd Cir.12/17/97), 704 So.2d 430. We granted the state's application for review, vacated the decision, and remanded the case to the court of appeal for consideration of respondent's remaining assignments of error. State v. Ste. Marie, 98-1167 (La.12/18/98), 723 So.2d 407. On remand, the Third Circuit reversed again after finding that the trial court had erred in denying the motion for a continuance. State v. Ste. Marie, 97-0168 (La.App. 3rd Cir.6/2/99), 741 So.2d 823. The court of appeal concluded that "the State's late disclosure that the videotape was missing and its delivery of the audiotape to [defense counsel] during the lunch hour on the first day of trial so prejudiced Ste. Marie that he was denied a fair trial." Ste. Marie, 97-0168 at 12, 741 So.2d at 829. We again granted the state's application for review because it appeared that the trial court had not abused its discretion in ruling on the motion and once more reverse.
State v. Ste. Marie, 99-2480, pp. 1-2 (La.9/15/00); 770 So.2d 315, 316-317. The supreme court reversed this court's decision and remanded for consideration of the Defendant's remaining assignments of error. We have done so.
We affirm the Defendant's convictions, but vacate the four five-year consecutive sentences with all but two years suspended on each count and remand to the district court for the imposition of concurrent sentences.

FACTS AND PROCEDURAL HISTORY
The facts and procedural history of this case are sufficiently detailed in our previous opinions, State v. Ste. Marie, 97-168 (La.App. 3 Cir. 12/17/97); 704 So.2d 430 and State v. Ste. Marie, 97-168 (La.App. 3 Cir. 6/2/99); 741 So.2d 823. We shall not repeat them in this opinion.

Insufficiency of the Evidence
Defendant claims the evidence was insufficient to prove every element of the charges regarding Am.G. and As.G. In accordance with State v. Hearold, 603 So.2d 731 (La.1992), this court addressed this assignment in its previous opinion, Ste. Marie, 741 So.2d 823, wherein this court found the evidence was sufficient to convict the Defendant of the offense against both Am.G. and As.G. Thus, this assignment has been ruled upon.

Testimony Concerning CSAAS
Defendant claims the trial court erred by allowing the testimony of Cindy Hayes, in violation of State v. Foret, 628 So.2d 1116 (La.1993).[1] In Foret, the supreme court discussed admission of testimony concerning Child Sexual Abuse Accommodation Syndrome (CSAAS). The supreme court defined CSAAS and commented on a purpose for which it is now used:
Child Sexual Abuse Accommodation Syndrome ("CSAAS") is a psychological phenomenon prevalent amongst victims of child sexual abuse. It was posited by Dr. Roland C. Summit in the late 1970s and early 1980s, and was a listing of the factors that were "both most characteristic of child sexual abuse and most provocative of rejection in the prevailing adult methodology about legitimate victims." Summit, "Abuse of the Child Sexual Abuse Accommodation Syndrome", 1 Journal of Child Sexual Abuse 153, 154 (1992). The factors were listed so as to both describe "the luxury of the *428 adult world not to listen and the accommodating efforts of the child not to complain." Id. The principal factors (or "dynamics") include secrecy, helplessness, entrapment and accommodation, delayed/conflicted/ and/or unconvincing disclosure, and retraction. Id. The stated purpose in the dissemination of information relating to this "syndrome" was to create a "common language" for treaters of abused children. Summit, "The Child Sexual Abuse Accommodation Syndrome", 7 Child Abuse & Neglect 177, 191 (1983).
Despite this stated purpose, the "syndrome" came to be used as a tool for determining whether or not abuse has occurred, as opposed to the intended use of the "syndrome" as a treatment device:
Some professionals conflated the reactions described by Summit, which are not probative of abuse, with behaviors that are probative of abuse. This combination of behaviors was then denominated a syndrome, the presence of which was supposedly probative of abuse. The defect of this "syndrome" is that some of its components are probative of abuse and others are not. Opinions based on such a "syndrome" are of dubious reliability.
Id. at 1124.
The Foret court determined that evidence concerning CSAAS "is of highly questionable scientific validity, and fails to unequivocally pass the Daubert threshold test of scientific reliability." Id. at 1127. However, assuming that CSAAS-based testimony passed the Daubert test, the court went on to determine whether the use of CSAAS-based testimony to bolster the victim's credibility was improper. The court determined that CSAAS-based testimony as determinant of a victim's credibility is not admissible; however, the court conceded the testimony could be admitted for very limited purposes. The court set forth the following discussion regarding the manner in which this evidence may be used:
When dealing with expert testimony, the critical question is "On this subject, can a jury receive appreciable help from this person?" Comment, "Psychological Expert Testimony on a Child's Veracity In Child Sexual Abuse Prosecutions", 50 La.L.R. 1039, 1047, citing 3A J. Wigmore, A Treatise on the Anglo-American System of Evidence in Trials at Common Law § 509 (J. Chadbourne rev. ed.1978). "Under certain circumstances, expert psychiatric testimony may reveal to the trier of fact characteristics or conditions of the witness which may assist the jury's assessment of credibility." State v. Kim, 64 Haw. 598, 645 P.2d 1330, 1334 (1982). The two most prevalent of these characteristics that may confound a jury are recantation and delayed reporting. 50 La. L.R. at 1046. The court in State v. Myers, 359 N.W.2d 604, 610 (Minn.1984), summed up the need for an expert to "place it in perspective":
The nature ... of the sexual abuse of children places lay jurors at a disadvantage. Incest is prohibited in all or almost all cultures, and the common experience of the jury may represent a less than adequate foundation for assessing the credibility of a young child who complains of sexual abuse... By explaining the emotional antecedents of the victim's conduct and the peculiar impact of the crime on other members of the family, an expert can assist the jury in evaluating the credibility of the complainant.
The proper presentation of this sort of expert testimony must focus on explaining to a jury why "superficially bizarre" *429 reactions such as delayed reporting, etc. take place in such cases. Wheat v. State, 527 A.2d 269, 273 (Del.1987). The opinion testimony must "seek to demonstrate or explain in general terms the behavioral characteristics of child abuse victims in disclosing alleged incidents," without giving "testimony directly concerning the particular victim's credibility." State v. Spigarolo, 210 Conn. 359, 556 A.2d 112, 123 (1989). If the testimony is limited in this fashion, then it is of assistance to the jury
in evaluating the psychological dynamics and resulting behavior patterns of alleged victims of child abuse, where the child's behavior is not within the common experience of the average juror.

Wheat, supra, at 275. See also, Frenzel v. State, 849 P.2d 741 (Wyo.1993).
The expert testimony of why victims might recant or delay reporting is being offered to rebut attacks on the victim's credibility. So long as the expert limits the testimony to general characteristics that would explain delays in reporting, recantations, and omission of details, the testimony will not
substitute [the expert's] estimation of credibility for that of the jury. Rather, it is to provide a scientific perspective for the jury according to which it can evaluate the complainant's testimony for itself.
Goldstein, "Credibility and Incredibility: The Psychiatric Examination of the Complaining Witness", 137 Am.J.Psychia. 1238, 1240 (1980).
Id. at 1129-30.
The following conclusion was reached by the supreme court:
In the instant case, the expert testified as to his expert opinion on the victim's credibility, and did not limit his testimony to general information about possible psychiatric explanations for the delay in reporting. In fact, the expert based most of his opinion upon the "level of detail" of the child's description of the sexual abuse. He concluded with an objected-to summation that, in his expert opinion, the witness was telling the truth on that occasion as to whether abuse had occurred. This expert assessment of the witness' credibility was improper, making the trial court's overruling of the objection erroneous.
Id. at 1130.
Foret found the error was not harmless and reversed the defendant's conviction. In determining this, the court noted the State's case was in large part based on the victim's testimony. The expert's testimony "unduly bolster[ed] this testimony and, in all probability, made it much more believable to the jury. Consequently, the jury probably gave the testimony of the victim more weight than it, standing alone, would have otherwise received." Id. at 1130-31.
In this case, Cindy Hayes testified that she diagnosed each child as having "adjustment disorder with mixed anxiety and depressed mood." She testified that she thought Defendant was "a prime example of a person who was very well-liked, very well-respected, very fun, extremely seductive, and extremely manipulative ... This was sort of, as we say in our field, a Pied Piper, you know, they were seduced." On direct examination, the State asked Ms. Hayes, "So it's your professional opinion that the way Am.G., C.H., As.G., and A.H. reported to you is consistent with the pattern of behavior of children who report sexually assaultive behavior?" Ms. Hayes answered, "That's correct." Defendant objected to the question, citing Foret, but the court stated, "When she is stating her opinion, it is permissible." In response to *430 defense counsel's questions on cross-examination, Ms. Hayes stated, "[I]n my practice it's been that the people that do come through my door are people who have actually experienced sexual abuse." She further stated, "My practice is such that I have not worked with a child in my sixteen (16) years, the ones that come into my private practice, that I've not believed that they've been sexually abused. I think that there probably are those who have not told the truth about it. My experience has not been that." Defense counsel and Ms. Hayes then had the following exchange:
Q. And there's no way for you to distinguish whether the symptoms such as anxiety were caused through the truth or falsity of the report?
A. Well I do believe so based on their testimony. It's very powerful to have a four (4) year old child sit and physiologically describe a man putting his middle finger in her vagina and her Suzie and pushing so hard that it caused her to burn when she pee-peed. It's very difficult for me not to believe anything other than that actually happened to a four (4) year old child.
In his brief, the Defendant notes he objected to Ms. Hayes' qualification as an expert based on Foret. In accepting Ms. Hayes, the trial court stated, "The extent to which I accept her opinions on credibility will depend on how she applies her expertise to the facts of this case." Defendant claims the trial court committed error by making this statement. The Defendant also notes the trial court's statement in its reasons for judgment that Ms. Hayes' testimony aided the court in interpreting the testimony of the children. Defense counsel claims Foret prohibited the trial court from relying on Ms. Hayes' expert opinion in determining the credibility of the victims.
Ms. Hayes' testimony on cross-examination clearly gives an opinion as to the credibility of the victims' testimony. However, that testimony was elicited in direct response to defense counsel's questioning. Defense counsel asked Ms. Hayes questions such as, "Is it your opinion that every report of sexual abuse is accurate?" and "So you believe that every child who walks through your door has actually been sexually abused?" The only statement which may not have been directly elicited by defense counsel was the statement referred to above in which Ms. Hayes specifically referred to her belief of a four-year-old who "physiologically describe[s] a man putting his middle finger in her vagina and her Suzie and pushing so hard that it caused her to burn when she pee-peed."
We conclude that Ms. Hayes' testimony violated Foret. However, the admission of that testimony was harmless. In State v. Johnson, 94-1379, p. 18 (La.11/27/95); 664 So.2d 94, 102, the supreme court applied the following test to determine whether the erroneous introduction of other crimes evidence was harmless: "whether the verdict actually rendered was surely unattributable to the error." Id. The verdict in the present case was surely unattributable to any error in Ms. Hayes' testimony. Although the trial judge stated in her reasons for judgment that Ms. Hayes' testimony aided her in interpreting the testimony of the children, the trial judge had previously instructed herself as follows:
I understand your point and I'll make that instruction to myself as the fact-finder here. She is tying the testimony to the skill and expertise that she has, what that has given her about the patterns that are common, and she's making that tie, but it remains for me to determine the credibility of their testimony as they tell their story.
*431 Since the trial court was well aware that she could not use Ms. Hayes' testimony as a determination of credibility, the error was harmless.

Hearsay Testimony of Social Worker
Defendant claims the testimony of Cindy Hayes, the social worker, regarding statements made to her by the children and their parents was inadmissible hearsay offered only to bolster the credibility of the children. The court admitted the testimony over the objection of Defendant on the ground that the statements were made for purposes of a therapeutic relationship.
La.Code Evid. art. 803(4) provides, in pertinent part:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
. . . .
Statements for purposes of medical treatment and medical diagnosis in connection with treatment. Statements made for purposes of medical treatment and medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to treatment or diagnosis in connection with treatment.
The 1999 Author's Notes regarding the Rule 803(4) exception to the hearsay rule state:
Without considering whether a statement by a child molestation victim to a therapist-certified social worker might qualify as a statement for "purposes of medical treatment and medical diagnosis in connection with treatment," the court in State v. Tucker, 619 So.2d 1076 (La. App. 1 Cir.1993), held the admission of such testimony was inadmissible hearsay and was reversible error. The authors agree with the result reached. The "statements for purposes of medical treatment and medical diagnosis in connection with treatment" should be given a narrow rather than expansive interpretation, and a statement to a therapist social worker not working under the direction of a physician should not be considered as fitting within this exception.
La.Code Evid. 803(4), 1999 Authors' Notes (8).
In Tucker, the victim's therapist/certified social worker testified that the victim had told her about sexual abuse by the defendant. She specifically stated what the child had told her during the therapy sessions. She also testified that the victim's conduct with the anatomically correct dolls indicated sexual abuse. The defendant denied all charges and objected to the introduction of the hearsay evidence regarding disclosures made to the therapist by the victim. The court found that without the hearsay testimony from the victim, the social worker could not have testified as to her conclusions. The court also found there was not enough evidence to sustain the defendant's conviction for molestation of a juvenile without reliance on the improperly admitted hearsay. It was the state's burden to prove beyond a reasonable doubt that the therapist's hearsay testimony did not contribute to the jury's finding of guilt, and the State did not meet that burden; therefore, the defendant's conviction was reversed, the sentence was vacated and the case was remanded for a new trial.
Over Defendant's objection, Cindy Hayes, the children's therapist and licensed clinical social worker, testified specifically as to what the children told her in their interview. The testimony of Ms. *432 Hayes and the therapist in Tucker is very similar. Although the court in Tucker concluded the statements at issue were hearsay, it did not state this conclusion was based on the fact that such statements do not fall within the exception set forth in La.Code Evid. art. 803(4). However, as cited above, the 1999 Author's Notes to that article clearly state that "a statement to a therapist social worker not working under the direction of a physician should not be considered as fitting within this exception." There is no evidence in this case that the social worker was working under the direction of a physician. Thus, Ms. Hayes' statements as to what the victims told her regarding the abuse should be inadmissible hearsay.
The admission of inadmissible hearsay is subject to the harmless error analysis, i.e., whether the verdict was surely unattributable to the error. State v. Chapman, 96-152 (La.App. 3 Cir. 10/9/96); 683 So.2d 1236, writ denied, 97-0583 (La.9/5/97); 700 So.2d 505. However, we will address the harmless error review after discussing the Defendant's claims regarding the admission of anatomical drawings and the admission of alleged hearsay testimony.

Anatomical Drawings
Defendant claims the trial court erroneously admitted the anatomical drawings of the children used during their interview with Detective Annette LeBlanc. The Defendant claims the drawings constituted statements made by the children outside the presence of the court. At trial, defense counsel objected when the State began questioning Detective LeBlanc about the anatomical diagrams. The court stated it would allow Detective LeBlanc to describe her procedures. Defense counsel then objected when the State moved to introduce these drawings into evidence.
The Defendant cites no authority for this claim other than the definition of hearsay provided for in La.Code Evid. art. 801(C): "`Hearsay' is a statement, other than one made, by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." The Defendant argues the drawings are hearsay since they are statements made by the children outside the presence of the court. However, according to the State, the introduction of these drawings was not to prove the truth of the matter asserted. Rather, the drawings were introduced in order for Detective LeBlanc to explain how they are used in connection with her interview. We agree. We conclude that the introduction of the drawings did not constitute inadmissible hearsay evidence.

Initial Report
Defendant claims the testimony of C.H.'s mother violated the hearsay rule because it was not one of initial report. La.Code Evid. art. 801(D)(1)(d) provides that a statement is not hearsay if the declarant testifies at trial, is subject to cross-examination and the statement is consistent with the declarant's testimony and is one of initial complaint of sexually assaultive behavior. The Defendant does not argue the issue of consistency of the statements.
The 1988 Official Comment to La.Code Evid. art. 801(D)(1) states, "It is only the initial complaint by the victim, whether made to a family member, policeman, or other person, that is defined as non-hearsay under this provision. Subsequent complaints or reports about the same crime would not be admissible under it. This may change Louisiana law."
Defendant objected to C.H.'s mother's testimony regarding C.H.'s report to her because C.H. had made her first report of *433 abuse to S.F., a little girl in the neighborhood. In response, the State argued that C.H.'s report to her mother was the "first report made to a responsible adult who took corrective action." According to the State, S.F. is a child who did nothing. Counsel approached the bench, but the discussion was not recorded. The court then stated the objection was overruled. S.F.'s age was not established. Although C.H.'s first complaint was to S.F. for purposes of La.Code Evid. art. 801(D)(1)(d), the first complaint was made to C.H.'s mother. In this case, the victim's complaint to her mother was the first complaint made to a friendly adult. Thus, it is non-hearsay and it was properly admitted at trial.
Defendant also claims the statement by A.H. to her mother, T.H., was not an initial complaint because A.H. first reported the sexual abuse to her adult sister, E.B. E.B. was a student at UL-Lafayette at the time of trial. After A.H. told E.B. of the sexual abuse, E.B. immediately awoke the mother to tell her about the abuse of A.H.
The mother's testimony was erroneously admitted into evidence since A.H.'s initial report was made to her sister, a friendly adult. However, this error is harmless since E.B. testified as to the first report immediately before the mother took the stand, and the mother's evidence was merely cumulative.

Harmless Error Analysis
Without considering the testimony of Ms. Hayes regarding the victims' statements to her and without considering the testimony of A.H.'s mother regarding A.H.'s initial report to her, the evidence was sufficient to convict the Defendant as to each victim. All the victims testified as to what the Defendant did to them. C.H. testified that the Defendant stuck his fingers up her private. C.H.'s mother testified that C.H. told her that the Defendant put his fingers in her vagina. A.H. testified that the Defendant touched her in her vagina. If she had shorts on, the Defendant touched her on the outside of her clothes, and if she had a dress on, he would go inside her clothes. E.B., A.H.'s sister, testified that A.H. told her the Defendant touched her in her vagina.
In Ste. Marie, 741 So.2d 823, this court addressed the sufficiency of the evidence with respect to Am.G. As the court noted, Am.G.'s testimony taken alone may not have been sufficient to prove the Defendant committed a lewd and lascivious act upon her. However, the court noted that "Am. G.'s trial testimony, coupled with Ms. Hayes' testimony and the other victims' testimonies, was sufficient to prove that Ste. Marie committed a lewd and lascivious act upon Am. G." Id. at 826. Although the court relied to some extent upon Ms. Hayes' testimony, it was not the only testimony supporting the offenses against Am.G. The court noted that C.H. testified that she remembered seeing the Defendant put his finger in Am.G. when he picked her up and held her in the air. The court also noted that A.H. testified that the Defendant touched her on the outside of her clothes if she had shorts on and the inside of her clothes if she had a dress on. When asked if she saw the Defendant do that type of touching on anyone else, A.H. answered, "[Am. G]." Id.
The court also addressed the sufficiency of the evidence with respect to As.G. Without specifically stating whether the evidence was sufficient or insufficient, the court noted that while "As.G.'s trial testimony and prior statements contained inconsistencies as to the number of times the sexual conduct occurred and as to the place at which the conduct occurred, As.G. consistently testified that Ste. Marie touched her private with his finger." Id. *434 at 827. The court also noted that the trial court found As.G.'s testimony, while appearing to have been reviewed and containing some inconsistencies, was credible. The court also discussed the testimony of witnesses besides Ms. Hayes which supported a finding of sufficient evidence to convict the Defendant of indecent behavior with As.G. For these reasons, the admission of the victims' statements given to Ms. Hayes and the admission of T.H.'s testimony regarding A.H.'s statement to her were harmless errors.

Waiver of Jury Trial
Defendant claims he did not knowingly and intelligently waive his right to a trial by jury. Defendant waived his right to a trial by jury by written motion approximately twenty (20) days before trial. He did not know that the exculpatory videotape would be lost by the State at that time and relied on the open file discovery agreement. Defendant claims the loss of the videotape returns him to "square one"the arraignment, where Defendant reserved his right to a jury trial.
The Defendant has not shown that the State's loss of the videotape affected the Defendant's choice to waive a jury. In his brief, he states the following:
Mr. Ste. Marie waived his right to trial by jury by written motion approximately twenty days before trial. At that time, Mr. Ste. Marie did not know that the critical videotape would be lost by the State. He relied on the open file discovery agreement and never doubted that he would be able to use the tape to construct his technical defense. Because his decision was based on his justifiable reliance on representations by the State, this situation goes far beyond mere trial strategy gone awry. The loss of the videotape returned the defense to square one. At square one of this case, arraignment, Mr. Ste. Marie reserved his right to trial by jury.
In his reply brief, defense counsel simply states that had the State revealed the tape was missing prior to the morning of trial, he could have withdrawn his jury trial waiver. However, these assertions do not prove that the Defendant would have withdrawn his waiver or refused to waive had he known that the videotape was missing.
Furthermore, in his opening statement to the court, defense counsel stated, "I'd just like to let the Court know that Mr. Ste. Marie has waived his right to a trial by jury in this case for fear that the tender age of these alleged victims would create the wrong impression for the jury." Defense counsel did not mention the loss of the tape.
There is no support to Defendant's assertion that the loss of the videotape affected his waiver of a trial by jury.

Excessive Sentences
The Defendant claims the court abused its discretion by imposing excessive and consecutive sentences. Defendant was sentenced to serve five (5) years at hard labor on each of the four (4) counts, with all but two (2) years on each count suspended, to run consecutively. He was placed on probation for five (5) years on each count to run consecutively. The appropriate sentence for indecent behavior with juveniles is found in La.R.S. 14:81(C):
Whoever commits the crime of indecent behavior with juveniles shall be fined not more than five thousand dollars, or imprisoned with or without hard labor for not more than seven years, or both, provided that the defendant shall not be eligible to have his conviction set aside or his prosecution dismissed in accordance with the provisions of Code of Criminal Procedure Article 893.
*435 Article 883 of the Louisiana Code of Criminal Procedure provides in pertinent part, "If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively." The Defendant claims concurrent sentences were more appropriate in this instance since the offenses could be construed to constitute parts of a common scheme or plan. The trial court, however, found otherwise. The trial court stated the following when imposing the Defendant's sentence:
The job is mine, and it is difficult. I'm appreciative of those who understand it. The law provides me a lot of guidance. First of all, in finding of guilt, I carefully analyzed the evidence that was presented to methat is my joband wrote reasons which I think reflect the considerations which I had in the evaluation of the testimony which is before me, and I reached the decision of guilt on the four counts. That is behind us. My job today is to appropriately sentence this man for this offense under these circumstances.
A lot of information has come to me. The victims' statements I have read with care. The effect of such events on the victims is extremely important. A great many persons have written to me on behalf of Mr. Ste. Marie, and I have read those and I am aware of the fine background and the many fine things he has done, of the love and respect that his friends and family have for him. I have read the pre-sentence investigation report which is that Mr. Ste. Marie has no prior offenses, a totally crime-free life. I must weigh all these things and consider the nature of the offenses themselves.
There are, in this matter, mitigating circumstances, namely, the crime-free pastI'm now speaking in legalese and not as a human being, as well as a judgecrime-free past, respect of the community, considerable loss and punishment already suffered by Mr. Ste. Marie. I'm aware of this. His own family needs him. I'm aware of that. The friends who respect him and know him well, know him better than I do, I have to take their views into account.
The nature of the crime, however, is one that not everybody sees and not everybody knows. In fact, only the participants usually know this type of crime. So I have to discount what his reputation is in favor of an analysis of the evidence of the crime which is before me, and there are some serious aggravating circumstances.
First, the original charge was molestation, not indecent behavior. The evidence that was presented could have supported the more serious charge. The more serious charge was reduced by the State, because the supervision and control element existed. Mr. Ste. Marie had built up a long relationship with these children and had much contact with them over time. Another aggravating circumstance, the events occurred over a period of time. We're not dealing here with just one incident in each case, but a course of conduct over a period of time. The victims in this case are very young. We have no way of knowing the true effect of the offenses because that's something that lasts a lifetime. We already have indications that there is serious impact on the children.
. . . .
Considering all the above, in accordance with the provisions of R.S. 14:81, you are hereby sentenced as follows:

*436 Four sentences are being imposed. These sentences are to be consecutive. We have four victims, each one as worthy as the other of the consideration of the Court, so there will be four consecutive sentences. For each of these sentences there is a jail term and also a period of probation.
In State v. Stamper, 624 So.2d 1208 (La.1993), the supreme court issued a short per curiam opinion in which it found that the trial court abused its discretion in imposing consecutive rather than concurrent sentences. The supreme court found that the defendant's actions constituted a common scheme or plan, for which concurrent sentences are more appropriate. Accordingly, the supreme court ordered the sentences to be served concurrently. The appellate opinion provides helpful guidance to ascertain the facts of the case. State v. Stamper, 615 So.2d 1359 (La.App. 2 Cir. 1993). Stamper was convicted of three counts of indecent behavior with three male juveniles. The victims were the ages of sixteen, fifteen and fourteen and attended a group known as Al-a-teen. The defendant was the adult sponsor of the group, and the incidents occurred while the victims were spending the night at the defendant's home. The trial court sentenced Stamper to sentences of four, five and six years, to run consecutively. The court of appeal addressed the issue of consecutive sentences, but found that the trial court did not err in ordering the sentences to run consecutively. The appellate court noted that "[a]lthough the trial court found that defendant's acts constituted a pattern of behavior, they were sufficiently separate and distinct so as not to arise out of a single course of conduct." Id. at 1365. It appears from the facts set forth by the appellate court, that the offenses occurred on different dates. Nonetheless, the supreme court found the defendant's actions constituted a common scheme and imposed concurrent sentences.
In State v. Taylor, 95-179, p. 11 (La. App. 3 Cir. 10/4/95); 663 So.2d 336, 343, the court quoted State v. Brown, 627 So.2d 192 (La.App. 3 Cir.1993), writ denied, 93-3101 (La.3/18/94); 634 So.2d 850, stating, "the court noted that in cases involving a first time felony offender, concurrent rather than consecutive sentences should be imposed where the offender's convictions arose out of the same course of conduct." In Brown, the defendant was convicted of forcible rape and several counts of sexual battery based upon different sexual acts performed upon his stepdaughter. The court held that the trial court should have imposed concurrent sentences since the defendant's past did not demonstrate that he was a habitual sex offender.
The Defendant's Pre Sentence Investigation (PSI) indicates that he has no criminal record. The Defendant has been married for twenty-seven (27) years and has three (3) children. He was employed for twenty (20) years as the Senior Human Resource Administrator for J. Ray McDermott.
We conclude that the Defendant's sentences are excessive based upon the fact that he is a first-time felony offender, and a substantial body of case law indicates he should have been sentenced concurrently rather than consecutively.

Error Patent
The Defendant claims an error patent exists in his sentence. According to the Defendant, his sentence violates La.Code Crim.P. art. 893(A), which provides that the period of probation may not exceed five (5) years. The Defendant was sentenced on each count to serve five (5) years at hard labor with all but two (2) years suspended, to run consecutively. Thereafter, the Defendant was placed on supervised probation for five (5) years on each count to run consecutively. Citing State v. Alexander, 95-1099 (La.App. 3 Cir. *437 12/26/96); 687 So.2d 527, the Defendant argues:
Where a defendant serves a period of confinement, and a period of probation is also imposed, the period of confinement must be added to the period of probation for purposes of determining whether the total amount of probation exceeds the five year limitation of Article 893(A).
This is not what Alexander holds. Alexander holds, "Periods of confinement imposed as a condition of probation must be added to the period of probation for purposes of determining whether the total amount of probation exceeds the five year limit under La.Code Crim.P. art. 893(A)." Id. at 528 (emphasis added). No period of confinement was imposed as a condition of probation in this case. Thus, the period of probation did not exceed the five (5) year limit set forth in La.Code Crim.P. art. 893(A).

Cumulation of Errors
Defendant claims the cumulation of errors at trial resulted in an unfair trial of Defendant in violation of the United States and Louisiana Constitutions. In State v. Castleberry, 98-1388, p. 51 (La.4/13/99); 758 So.2d 749, 776, cert. denied, 528 U.S. 893, 120 S.Ct. 220, 145 L.Ed.2d 185 (1999), the supreme court stated the following regarding a claim of cumulation of errors:
This Court has carefully considered each of defendant's assignments of error. We have also examined the record for unassigned errors. As discussed throughout this opinion, the vast majority of the errors assigned by defendant are completely meritless. Those scant errors that are technically meritorious are harmless. We are "unwilling to say that the cumulative effect of assignments of error lacking in merit warrants reversal of a conviction or sentence." State v. Strickland, 94-0025 (La.11/1/96), 683 So.2d 218.
A defendant is entitled to a fair, not a perfect, trial. Id., citing Bruton v. United States, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968). The record reveals that the defendant in this case received a very fair trial.
After a review of the present appellate record and brief, we find only two errors the admission of Ms. Hayes' testimony regarding the victims' statements to her and the admission of T.H.'s testimony regarding A.H.'s statement to her. We conclude that the admission of the above testimony was harmless. According to the court in Castleberry, the cumulative effect of these errors does not warrant a reversal of the Defendant's conviction.

CONCLUSION
For the foregoing reasons, the Defendant's convictions are affirmed but the sentences are vacated and the case is remanded for resentencing to concurrent sentences in accordance with this court's opinion.
CONVICTIONS AFFIRMED. CONSECUTIVE SENTENCES VACATED AND CASE REMANDED TO DISTRICT COURT FOR RESENTENCING.
NOTES
[1] Foret adopted the analytical model for the admission of scientific evidence articulated in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).