MOORE, J.
Jimmy M. Kennedy was charged by indictment with aggravated rape, La. R.S. 14:42, and by bill of information with aggravated burglary, La. R.S. 14:60. Pursuant to a plea bargain, the state reduced the aggravated rape charge to an attempt and Kennedy pled guilty to both offenses as charged. The district court imposed consecutive sentences of 10 years at hard labor on the aggravated burglary charge and 35 years at hard labor without benefits on the attempted aggravated rape. Kennedy filed a motion for reconsideration of sentence, which the district court denied. Kennedy now appeals, urging that the sentences are excessive and that the court erred in ordering them to be served consecutively. Because the district court articulated no reasons for directing the sentences to be consecutive, we affirm the convictions but vacate the sentences and remand the cases to the district court for resentencing.

Factual Background

Early on the morning of June 27, 2001, two men forced entry into the Bossier City home of P.F., a 61-year old lady, while she was asleep in bed. Both intruders were wearing “some type of covering over their faces.” One of them, later identified as Kennedy, jumped on the victim, rolled her onto her stomach, removed her panties, and asked where her money was. She replied she did not have any. Kennedy struck her repeatedly on her right side and the back of her head; he then pushed her legs up and penetrated her vaginally. She was not certain whether he used his fingers or his penis. The penetration continued for several minutes. Kennedy told her they were doing this in retaliation for calling the police on them after they broke into [2her home a week earlier. During the assault, the other man was searching P.F.’s dresser drawers.
After the assailants left, P.F. called the police; she was taken to the emergency room where she was given a “rape kit” test. At the house, officers found a sledgehammer which apparently had been used to break in the front door. They also found a condom on P.F.’s bed and lifted several latent fingerprints from the point of entry and from objects which had been strewn about the bedroom. Finally, in the driveway of the house next door, they found a credit card of P.F.’s; this was also dusted for fingerprints.
Several months later, a Crime Stoppers’ tip led police to Edward and Demetrius Coleman. Edward’s fingerprints matched those found on the credit card. Demetrius implicated Kennedy in the offense, saying Edward had been ridiculing Kennedy for “f* ***** that old lady.”
In late April 2002, Kennedy was arrested on an unrelated charge. Questioned about the burglary of P.F.’s house, he told Officer Cole that he was not involved but that Edward Coleman and another man had done it. Nevertheless, Kennedy voluntarily provided a buccal swab DNA sample.
The North Louisiana Criminalistics Laboratory compared the DNA profiles from the condom and P.F. The report stated that the DNA in the condom was 1.49 trillion times more likely to be from the victim and Kennedy than from the victim and an unknown, unrelated African American male. The test specifically excluded Edward Coleman as the source of the DNA.
lain late June, Sergeant Gregory took a taped statement from Kennedy. This time he admitted breaking into the house with Edward Coleman, and accused Coleman of *315 hitting P.F. and stealing her credit cards. He said he thought about sexually assaulting her, and even attempted to put on the condom, but he denied any actual sexual contact. He added that he got no proceeds from the burglary.
Kennedy pled guilty to a reduced charge of attempted aggravated rape and to aggravated burglary. At a sentencing hearing in February 2003, the district court stated it had read the sentencing guidelines of La.C.Cr.P. art. 894.1 along with Kennedy’s PSI report, which showed a “large volume of misdemeanor traffic-type offenses” and one guilty plea to misdemeanor theft. The court briefly recounted the facts of the offense, noting that the victim was indeed raped “by one or more of the individuals that were there.” Saying it had “reviewed the seriousness of the offense,” the court ordered the sentences to be consecutive. The court imposed 10 years at hard labor for the aggravated burglary and 35 years at hard labor and without benefits for the attempted aggravated rape.
Kennedy filed a motion for reconsideration, urging that the sentences are excessive and should not have been made consecutive. The district court denied the motion for reconsideration without a hearing.

Discussion

By one assignment of error, Kennedy urges that the sentences imposed, particularly by them consecutive nature, were harsh and excessive. He contends that the court failed to particularize the sentences as required |4by Art. 894.1. He further argues that the court failed to state any factors or reasons to justify consecutive sentences for offenses that obviously arose from the same act or transaction, contrary to La.C.Cr.P. art. 883.
The record must show that the district court took cognizance of the criteria set forth in Art. 894.1. State v. Smith, 433 So.2d 688 (La.1983); State v. Loyd, 35,637 (La.App. 2 Cir. 2/27/02), 810 So.2d 1214, writ denied, 2002-1159 (La.4/21/03), 841 So.2d 779. However, when the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even in the absence of full compliance with the article. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Johnson, 35,908 (La.App. 2 Cir. 4/3/02), 813 So.2d 1180. Here, the court cited Art. 894.1 and noted Kennedy’s minimal criminal history. The court also noted the seriousness of the offense and stated its belief that Kennedy actually raped the victim. The benefit accruing from the plea bargain is a factor that would justify imposing even the statutory maximum of 50 years. State v. Guzman, 99-1528 (La.5/16/00), 769 So.2d 1158. On this record, we find an adequate compliance with Art. 894.1.
Kennedy’s more serious argument, however, contests the articulation of facts to support the consecutive sentences. When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La.C.Cr.P. art. 883. Nonetheless, the district court retains discretion to impose consecutive penalties in cases in which the offender’s InPast criminality or other circumstances in his background or in the commission of the crimes justify treating him as a grave risk to the safety of the community. State v. Walker, 2000-3200 (La.10/12/01), 799 So.2d 461.
All factors are to be considered. State v. Ortego, 382 So.2d 921 (La.1980), cert. denied, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980). Among the factors to *316 be considered are the defendant’s criminal history, the gravity or dangerousness of the offenses, the viciousness of the crimes, the harm done to the victims, whether the defendant poses an unusual risk of danger to the public, his apparent disregard for the property of others, the potential for rehabilitation, and whether he received a benefit from a plea bargain. State v. Smith, 26,661 (La.App. 2 Cir. 3/1/95), 651 So.2d 890, writ denied, 95-0918 (La.9/15/95), 660 So.2d 458, and citations therein. When consecutive sentences are imposed, the district court shall state the factors considered and its reasons for the consecutive terms. State v. Rollins, 32,686 (La.App. 2 Cir. 12/22/99), 749 So.2d 890, writ denied, 2000-0549 (La.9/15/00), 768 So.2d 1278, and citations therein. When it fails to do so, the supreme court normally vacates the sentences and remands for resentencing in accord with Arts. 883 and 894.1. State v. Sherer, 437 So.2d 276 (La.1983); State v. Ortego, supra.
We are constrained to hold that the district court did not state any reasons for making the sentences consecutive. To be sure, the record would support consecutive sentences, but there are also countervailing considerations. The offenses were obviously part of a single act or transaction. Kennedy was relatively youthful, at 21 years old, and had no ^history of crimes of violence and no other felonies. The record does not disclose his potential for rehabilitation. On the other hand, Kennedy’s criminal conduct appears particularly vicious, a prolonged beating and rape. P.F. was physically injured, mentally traumatized, still suffers nightmares, and was so terrified that she sold her home at a loss. Since the crimes were in retribution for reporting an earlier burglary, Kennedy may pose an unusual risk of danger to the public. The manner of entry into her house shows an apparent disregard for the property of others. From the district court’s silence, we cannot assume that it found any of these factors to be paramount. State v. Sherer, supra.
The court’s failure to state any reasons for imposing consecutive sentences requires us to vacate the sentences and to remand the cases for resentencing in accord with Arts. 883 and 894.1. State v. Sherer, supra; State v. Ortego, supra; State v. Maxie, 30,877 (La.App. 2 Cir. 8/19/98), 719 So.2d 104.

Conclusion

For the reasons expressed, we affirm Kennedy’s convictions for aggravated burglary and attempted aggravated rape. The consecutive sentences, however, are vacated, and the cases remanded to the district court for resentencing in accordance with the principles stated in this opinion.
CONVICTIONS AFFIRMED; SENTENCES VACATED, AND CASES REMANDED.