WILLIAMS, J.
hThe defendant, Perneicia Simpson, was charged by bill of information with 10 counts of second degree cruelty to a juvenile, in violation of LSA-R.S. 14:93.2.3. She pled guilty as charged and was sentenced to serve six years at hard labor for each count. All sentences were ordered to run consecutively, .for a total sentence of 60 years’ imprisonment at hard labor. For the following reasons, we affirm the defendant’s convictions, vacate the sentences imposed and remand for resentencing in accordance with this opinion.
FACTS
On April 17, 2013, the defendant, 18-year-old Perneicia Simpson, took her infant daughter, J.B.-1, to the emergency room at St. Francis Medical Center in Monroe. At that time, the infant was 17 days old and had a twin brother.[1]' The defendant and the twins’ fáther, Shuddar-rius L. Ballard, reported that the infant was crying continuously, as if she were in pain. The emergency room physician examined J.B.-l and discharged her with a diagnosis of colic. The family returned to the emergency room on April 30, 2013, and J.B.-l was again diagnosed with colic.
On May 1, 2013, the defendant took J.B.-1 for a routine visit to the pediatrician, Dr. Lyndall Saadat. By this time, J.B.-l was one month old. The defendant informed Dr. Saadat that the infant’s eyes were “crossing,” and would “drop” every time she attempted to look at an object. The defendant also reported that J.B.-1 was “jumpy” and would cry every time | gsomeone picked her up. Dr. Saadat examined the infant and noted that she was “very irritable” and had a'“full to bulging fontanelle and a downward gaze” in both eyes. Dr. Saadat ínstructéd the defendant to return with the baby the following day. On May 2, 2013, Dr. Saadat consulted with Dr. Kim Malmay, a pediatric hospitalist at St. Francis Medical Center. Dr.- Malmay *198 recommended that J.B.-1 be brought to the hospital’s emergency room.
The defendant took J.B.-l to the emergency room as recommended. According to the emergency room notes, Ballard told Dr. Malmay that approximately two weeks prior to that date, he was holding J.B.-1 while lying on the bed. After he fell asleep, the infant fell out of his arms onto the carpeted floor. According to Ballard,after that incident, J.B.~l’s eyes began “wandering.” Ballard further stated that days before the May 2, 2013, emergency room visit, he and the defendant had left J.B.-l with relatives in Bastrop. Thereafter, they noticed that the infant’s eyes continued to “wander” and “it seemed like she hurt when she was touched.”
Radiological tests revealed that J.B.-l had numerous skull fractures and subdural hematomas, which implied “[rjepeated and severe nonaccidental cerebral trauma[.]” Thereafter, J.B.-1 was examined by Dr. J.A. Bermudez, a pediatric neurosurgeon. Dr. Bermudez noted that J.B.-l’s injuries were consistent with remarkable trauma to the head and were incompatible with a single fall from the bed. He concluded that the injuries “represent child abuse.” J.B.-l was admitted to the pediatric intensive care unit.
laThe emergency room staff alerted the Monroe Police Department. When Detective James A. Booth arrived at the hospital, the staff informed him that J.B.-l had at least seven skull fractures. The staff also informed the detective what J.B.-l’s parents had stated with regard to the infant’s fall from the bed.
Det. Booth spoke with the defendant and Ballard, who agreed to. provide statements to the officers. Prior to speaking with Det. Booth,, the defendant was advised of her Miranda rights. Thereafter, the defendant made the following statements: she lived with her mother and her three children;[2] J.B.-1 was injured when Ballard accidently dropped her two weeks prior to the hospital admission; after she Was dropped, J.B.-1 cried for a “few seconds”; J.B.-1 stopped crying when she was picked. up; and she and Ballard thought J.B.-l “was fine” after the fall.
The detectives interviewed Ballard, then re-interviewed the defendant.' Det. Booth questioned the defendant about the truthfulness of her statement and the lack of emotion she exhibited with regard to J.B.l’s injuries. The defendant responded that the detectives “were right.” She then admitted' to hitting J.B.-1 on the head with a closed fist because the infant would not stop crying. She stated that she had hit the infant approximately seven times “as hard as she could” during the two-week period prior to the victim’s admission to the hospital. The defendant also admitted to “slamming” J.B.-1 into a swing.
The detectives then questioned the defendant about J.B.-2, the twin |4brother of J.B.-l. The defendant admitted that she had hit the male twin three times “with all my might.” Thereafter, J.B.-2 was taken to St. Francis Medical Center, where he was diagnosed with a skull fracture and multiple contusions of the brain. The defendant admitted that she had hit J.B.-l and J.B.-2 on the side of their heads because she was frustrated and “stressed” about their continuous crying. She did not implicate Ballard, stating that she was always alone when she hit the infants.
The defendant was charged by bill of information with 10 counts of second degree cruelty to a juvenile “between the dates of March 31[,] 2013 and May 2[,] *199 2013.”[3] On August 14, 2014, the defendant pled guilty as charged, without the benefit of a plea agreement or sentencing cap.
A sentencing hearing was scheduled for October 30, 2014. However, prior to the hearing, the defendant’s counsel, Charles Kincade, died unexpectedly; the hearing was postponed. On March 10, 2015, Derrick K. Williams enrolled as counsel.[4] On March 12, 2015, Williams filed'a motion to continue the sentencing hearing, alleging, in part: ⅜ * ⅝
2. Counsel for defendant received a sentencing inclination memo on March 10, 2015, from Honorable Judge Alvin Sharp in relation to this matter. Due to memo and possible long hard labor sentence, counsel for defendant would request that this Court continue this sentencing to|Bfurther diseuss possible legal alternatives with defendant. Counsel for defendant does not believe a continuance in this case will prejudice the State in any manner. Furthermore, the seriousness of the exposure of time defendant is facing along with the short amount of time counsel has been involved in this case supports the urging of a continuance.
3. Furthermore, due to the untimely death of defendant’s prior counsel, there may be legal issues involving the defendant’s previously entered guilty plea being knowingly and intelligently entered.
Counsel for defendant requests some time to research those legal issues and file motions/pleadings addressing those concerns prior to this Court sentencing defendant. ■ * ⅜ *
On the morning of the hearing, the court allowed defense counsel to listen to the recording of the guilty plea proceedings. Thereafter, court reconvened and Williams stated on the record that “everything seemed to be in order[.]” The court denied the motion to continue and the hearing was . conducted as scheduled. No witnesses were called to testify. At the conclusion of the hearing, the defendant was sentenced to serve “six years per count on the ten counts to run consecutive with one another for a total of sixty years.”- The defendant filed a motion to reconsider the sentence, arguing that her sentence was excessive and that the trial court failed to sufficiently weigh the factors set forth in LSA-C.Cr.P. art. 894.1. The trial court'denied the motion.
The defendant now appeals.
DISCUSSION
The defendant contends the trial court erred in imposing consecutive sentences for offenses arising out of the same course of conduct. She also | (¡contends the aggregate sentence of 60 years is harsh and constitutionally excessive, .given the facts and circumstances of the case. The defendant argues as follows: at'the time of the offenses, she was 18 years old and “one month removed from giving birth to twin *200 children”; she “lacked the maturity to deal with the day to day care of one child, let alone two”; and she “lacked the coping skills and sense of responsibility which placed her in a position to harm her own children.”
The law regarding reviewing a sentence for excessiveness is well settled.[5] The penalty for a second degree cruelty to a juvenile conviction i^imprisonment at hard labor for not more than 40 years. LSA-R.S. 14:93.2.3(C).
The relevant law with regard to concurrent and/or consecutive sentences is as follows:
When two or moré convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. LSA-C.Cr.P. art. 883. Although Article 883 favors imposition of concurrent sentences for crimes committed as part of the same transaction or series of transactions, a trial court retains the discretion to impose consecutive penalties in cases in which the offender’s past criminality. or other circumstances in his or her background or in the commission of the crimes justify treating him or her as a grave risk to the safety of the community. State v. Walker, 2000-3200 (La.10/12/01), 799 So.2d 461.
Concurrent sentences arising out- of a single course of conduct are not manda *201 tory. State v. Parker, 42,311 (La.App.2d Cir.8/15/07), 963 So.2d 497, unit denied, 2007-2053 (La.3/7/08), 977 So.2d 896, and consecutive, sentences under those circumstances are not necessarily excessive. State v. Williams, 445, So.2d 1171 (La.1984). Among the factors to be considered are the defendant’s criminal history, State v. Ortego, 382 So.2d 921 (La. 1980), cert. denied, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980); State v. Jacobs, 493 So.2d 766 (La.App. 2d Cir. 1986); the gravity or dangerousness of the offense, State v. Adams, 493 So.2d 835 (La.App. 2d Cir.1986), writ denied, 496 So.2d 355 (La.1986); the viciousness of the crimes, State v. Clark, 499 So.2d 332 (La.App. 4th Cir.1986); the harm done to the victims, State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.1983), writ denied, 435 So.2d 433 (La.1983); whether the defendant constitutes an unusual risk of danger to the public, State v. Jett, 419 So.2d 844 (La.1982); the potential for the defendant’s rehabilitation, State v. Sherer, 437 So.2d 276 (La.1983); State v. Lighten, 516 So.2d 1266 (La; App. 2d Cir.1987); and whether the defendant has received a benefit from a plea bargain. State v. Jett, supra; State v. Adams, supra.
When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. State v. Johnson, supra; State v. Boudreaux, 41,660 (La. App.2d Cir.12/13/06), 945 So.2d 898. The failure to articulate specific, reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences. See State v. Bou-dreaux, supra.
Unless there are specific reasons for a longer sentence, concurrent sentences rather than consecutive sentences are appropriate for convictions arising out of a single course of conduct, at least for a defendant with no prior criminal record and in the absence of a showing that public safety requires a longer sentence. State v. Armstead, 432 So.2d 837 (La. 1983); State v. Cathey, 569 So.2d 627 (La.App. 2d Cir.1990).
If adequate compliance with the sentencing guidelines is found, the reviewing court must determine whether the sentence imposed is too severe in light of this particular defendant and the circumstances of his or her case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Washington, 46,568 (La.App.2d Cir.9/21/11), 73 So.3d 440, writ denied, 2011-2305 (La.4/27/12), 86 So.3d 625.
In the instant ease, prior to imposing the defendant’s sentences, the trial court considered the factors set forth in LSA-C.Cr.P. art. 894.1. The court noted numerous aggravating factors including: the age of the victims at the time of the offenses; the multiple skull fractures inflicted on J.B.-l; the defendant initially denied hitting the victims and attempted to blame Ballard for J.B.-l’s injuries; the defendant admitted that she hit the infants bwith a closed fist “with all [her] might” and slammed J.B.-1 into a swing; the abuse occurred in the victims’ home, which should have been their “sanctuary”; the defendant always hit the infants on their heads; and the defendant abused the infants when she was alone with them. The court described the defendant’s' actions as “overt and calculated” and noted that the defendant displayed a disregard for the ■victims’ health and safety.
The court also noted the following mitigating factors: the defendant was 18 years .old; she had graduated from high school with a 3.5 grade point average; she did not *202 have a juvenile or adult criminal history prior to the current matter; her parental rights had been, or would soon be, terminated; the children were currently being cared for by responsible guardians; and the victims’ • father and paternal grandmother, with whom the twins reside, believed the defendant “deserved a second chance.”
The court further noted that, based on the charges, the defendant could have been sentenced to 400 years in prison for the 10 offenses of conviction. However, the court did not articulate specific reasons for imposing the 10 consecutive sentences.
In State v. Dixon, 2003-160 (La.App. 3d Cir.6/4/03), 852 So.2d 471, the defendant physically abused his stepson over a period of time and was convicted of second degree cruelty to a juvenile. As a result of the abuse, the victim sustained the following injuries: a hematoma' tó his forehead; a laceration on his upper lip; swelling to his upper and lower lips; multiple semicircular lesions consistent with being struck by an extension cord; bruises over his entire back and chest; bruising on the inner and outer Imthighs, buttock, and legs; and, swollen knees, which diminished his ability to bend them. The defendant was sentenced to serve 30 years’ imprisonment at hard labor.
In State v. Davis, 39,197 (La.App.2d Cir.12/16/04), 890 So.2d 708, unit denied, 2005-1346 (La.1/9/06), 918 So.2d 1041, the defendant was convicted of second degree cruelty to a juvenile after he severely beat his girlfriend’s four-year-old son. He was sentenced to serve 30 years’ imprisonment at hard labor. The victim stated that the defendant had kicked him, hit him with his fists and had thrown him. The victim’s injuries included severe bruising on both his sides and abdomen, and his back was completely discolored from shoulders to knees. The victim also had human bite marks on his face and buttocks, and suffered kidney failure and severe muscle damage as a result of his injuries. The physician who treated the victim described the beating as “severe” and stated that it was one of the worst cases he-had seen where the victim survived the 'injuries. State v. Davis, supra at 710.
In State v. Vance, 2003-1946 (La.App. 4th Cir.6/30/04), 879 So.2d 862, writ denied, 2006-1071 (La.11/9/06), 941 So.2d 34, the court affirmed a 20-year hard labor sentence for a second-felony offender convicted of second degree cruelty to . a juvenile. The one-year-old victim was brought to the hospital by his mother with second-degree burns to his head, face, feet, ankles and backside. The defendant stated that the burns occurred after he gave the child a bath, and he stayed in the bathtub too long. However, a physician testified that the pattern of injuries suggested the child was dipped | ninto boiling hot water.
In State v. Galliano, 2005-962 (La.App. 5th Cir.8/29/06), 945 So.2d 701, unit denied, 2006-2367 (La.4/27/07), 955 So.2d 682, the victim, the two year-old son of the defendant’s girlfriend, was hospitalized with a fractured femur that occurred while in the defendant’s care. Child Protective Services placed the victim in the care of his maternal grandfather. Approximately two weeks after the victim was returned to .the custody of his mother and the defendant, he was hospitalized with life-threatening injuries; again, the injuries occurred while the victim was in the defendant’s care. The injuries were later attributed to “shaken baby syndrome,” which resulted in the victim becoming permanently physically and mentally challenged. The defendant, a first-felony offender, was convicted of second degree cruelty to a juvenile and was sentenced to serve 40 years at hard labor.
*203 In State v. J.S., 2010-0391 (La.App. 3d Cir.11/3/10), 2010 WL 4325831 (unpublished), the defendant was 23 years old and the mother of four children. She injured the victim, her two-month-old infant. The children were removed from her custody. Approximately five weeks after being returned to the defendant’s custody, the defendant injured the victim again, causing multiple injuries, including a skull fracture and fractures to both feet. The defendant pled guilty to two counts of second degree cruelty to a juvenile. In exchange for the defendant’s plea, the state dismissed three other counts of the same offense. The defendant was sentenced to 30 years’ imprisonment at hard labor for each count, with 18 of the 30 years | ^.suspended, and five years’ supervised probation upon her release from custody. The sentences were ordered to run concurrently, and the supervised probation periods were to run consecutively.
In State v. Hollins, 43,168 (La.App.2d Cir.4/30/08), 981 So.2d 819, the defendant, an 18-year-old mother, . was charged with second degree cruelty to a juvenile for life-threatening injuries- she inflicted on her infant son. The victim suffered bite marks to both arms and fractures to his upper and lower left leg, upper right arm, and left collarbone, as well as bilateral rib fractures. The victim also had bilateral hema-tomas to the brain, which required emergency surgery. The' treating physician stated that the injuries to the victim’s brain occurred at different times, and the victim exhibited symptoms of “shaken baby syndrome.” Pursuant to a plea bargain, the defendant was sentenced to 10 years at hard labor. This Court affirmed the sentence, stating that the defendant benefited tremendously from the plea bargain and that she was one of the worst offenders.
In State v. Thomas, 2013-0279 (La.App.1st Cir.11/1/13), 2013 WL 5915193 (unpublished), -the defendant’s three-month-old twin daughters were left in his care. When the children’s mother returned home, she noticed that one of the -infants was not breathing. The infant was' taken to' the emergency -room, where it was discovered -that she had suffered “very severe” trauma to her head, a. skull fracture, old and new rib fractures and old and new brain bleeding. The defendant was convicted of second degree cruelty to a.juvenile and was sentenced to serve 25 years at hard labor. The trial court noted that the defendant had no prior criminal history; however, | iathe court placed .heavy emphasis on the permanent injuries the victim suffered, and ■ the deliberate, cruelty imposed on the young victim. The court of appeal affirmed the sentence.
In State v. Price, 48,986 (La.App.2d Cir.5/15/14), 140 So.3d 1212, writ denied, 2014-1274 (La.2/6/15), 158 So.3d 814, the defendant’s :two-month-old son was rushed to, the hospital. The victim was unresponsive and had bruises on his buttocks, knees, legs, arms and face. Tests revealed that the victim had multiple subdural hemorrhages, multiple broken bones, brain injuries of differing stages, multiple-retinal hemorrhages, and hearing and vision loss. The defendant was found guilty of second degree cruelty to a juvenile, adjudicated a fourth-felony offender and sentenced to 24 years at hard labor. The state appealed the trial court’s decision to deviate from the minimum 40-year sentence required under LSA-R.S. 15:529.1. On appeal, this Court vacáted the sentence and remanded for resentencing, finding that the defendant did not demonstrate by clear and convincing evidence that he was an exceptional defendant deserving of a deviation.
In the instant case, in her statement to the police officers, the defendant admitted *204 that she struck J.B.-1 seven times and that she struck J.B.-2 three times. None of the cases we have reviewed have shown that the defendant was charged with, and received a separate sentence for, every blow inflicted. Additionally, none of the defendants in the cases cited herein received what amounted to a 60-year sentence, not even the defendant who was a fourth-felony offender.
In State v, Kennedy, 37,594 (La.App.2d Cir.10/29/03), 859 So.2d 312/the defendant raped the victim during the burglary of her home. He pled guilty to aggravated burglary and attempted aggravated rape. He was sentenced to serve 10 years’ imprisonment for the burglary conviction and 35 years for the attempted rape conviction; the sentences were ordered to be served consecutively. This Court vacated the sentences, stating:
We are constrained to hold that the district court did not state any reasons for making the sentences consecutive. To be sure, the record would support consecutive sentences, but there are also countervailing considerations. The offenses were obviously part of a single act or transaction. [The defendant] was relatively youthful, at 21 years old, and had no history of crimes of violence and no other felonies. The record does not disclose his potential for rehabilitation. ⅞ Hi *
The court’s failure to state any reasons for imposing consecutive sentences requires us to vacate the sentences and remand the cases for resentencing in accord with [LSA-C.Cr.P.] Arts. 881 and 894.1.
Id. at 316 (internal citations omitted).
In State v. Boudreaux, supra, in exchange for the state’s agreement not to charge him as a habitual offender, the defendant pled guilty to 14 counts of video voyeurism. He was sentenced to serve four years at hard labor for each count (a total of 56 years). This Court vacated the sentence and remanded the case, stating:
[Djefendant’s activities all formed a part of a single scheme or plan, something that the trial court did not adequately address at sentencing. While it is within the trial court's discretion to impose sentences consecutively in an appropriate ‘scheme or plan’ case, in the instant matter, the imposition of a 56-year-term without parole is out of proportion to the offense and appears to impose a purposeless and needless infliction of pain and suffering. * * *
11sThe trial court should reevaluate and address which of these counts represent a separate and distinct crime and impose consecutive and concurrent terms in a more appropriate fashion.
Id, at 904.
In State v. Wallace, 2011-1258 (La.App. 3d Cir.5/30/12), 92 So.3d 592, writs denied, 2012-1861, 1865 (La.3/8/13), 109 So.3d 355, the defendant sold cocaine to a confidential informant on three separate occasions, over a three-week period. She was charged with, and convicted of, three counts of distribution of a controlled dangerous substance. She was sentenced to serve five years on each count, to ran consecutively. After reviewing the jurisprudence in drug-related cases, the court of appeal found that the imposition of three consecutive five-year sentences was constitutionally excessive and vacated the sentences, stating:
There was no indication that Defendant was involved in a large-scale drag operation, that she had a history of drug offenses, or that she used drugs. There *205 is no indication of a felony criminal history at all. Further, a more severe penalty was imposed, on Defendant than more egregious violators of the same offense.
Id. at 605. The Court remanded the matter to the trial court “with the instruction that the maximum consecutive sentence may not total more than ten years at hard labor with the first two years to be served without the benefit of parole, probation, or suspension of sentence.” Id., at 605-606.[6]
In State v. Thibodeaux, 2004-1166 (La.App. 1st Cir.4/20/05), 915 So.2d 807, the .defendant pled guilty to 10 counts of molestation of a juvenile. The conduct involved one victim, with multiple acts that extended over, a period of seven years-between January 1, 1990 and December 31, 1997. The court sentenced the defendant to serve three years’ imprisonment at hard labor for each count, and ordered that the sentences be served consecutively. The court of appeal vacated the consecutive sentences, stating:
The record indicates that [the defendant] was fifty-seven years of age at the time of the sentencing with no prior convictions or arrests. The Pre-Sén-tence Investigation Report recommended the defendant be sentenced to three years of imprisonment at hard labor. A substantial body of case law indicates the defendant, a first felony offender whose actions constituted a common scheme, should have been sentenced to concurrent rather than consecutive ■ sentences. ■ Although the trial court filed extensive reasons for the sentencing in this matter, we find the reasons- inadequate to justify the.-imposition of -consecutive sentences .herein. Thus, we vacate the consecutive sentences imposed herein and remand for resentenc-ing in accordance with the views .herein expressed. ,. ;■
Mat 811.
In State v. Ste. Marie, 1997-0168 (La. App. 3d Cir.4/18/01), 801 So.2d 424, the defendant was convicted of four counts of indecent behavior with juveniles. Four victims were involved and the conduct 'occurred over a period of five years. The defendant was sentenced to serve five years at hard labor on each of the four counts, with all but two years on each count |-j7suspended. The sentences were ordered to be served consecutively. The court of appeal concluded that the sentences were excessive “based upon the fact that he is a first-time felony offender, and a substantial body of law indicates that he should have been sentenced concurrently rather than consecutively.” Id. at 436. The Court vacated the sentences and remanded the case for resentencing with instructions to the trial court to sentence the deféndant “to concurrent sentences in accordance with this court’s opinion.” Id. at 437.[7]
*206 We have reviewed this, record, in its entirety. As stated above, the defendant was 18 years old when the crimes of conviction were committed.-' She was the mother of three children, all under the age of two years old. She had no prior convictions or arrests. The defendant had recently graduated from high school with a 3.5 grade point'average and had Completed one semester of college.- However, it is clear that the defendant was woefully unprepared to cope with caring for three young children without consistent assistance from anyone. She confessed to inflicting the injuries and subsequently pled guilty to IQ counts of second degree cruelty hsto a juvenile, without the benefit of a plea agreement or sentencing recommendation from the state. Although the trial court repeatedly referred to the potential long-term effects of J.B.-l’s injuries, the ■paternal grandmother, who has maintained custody of the victims since they were discharged from the hospital, stated that both babies were “doing great”. and were “growing normally.” The defendant no longer has custody of her children and she would not pose an unusual danger to them once released from prison.
The defendant’s conduct was reprehensible and had a significant effect on her victims. Since second degree cruelty to a juvenile is a crime of violence, the defendant will be required to serve at least 85% of her sentence — or 51 years at hard labor — before she becomes eligible for parole.
The jurisprudence indicates that the criminal- behavior of this first-felony offender,. although reprehensible, constituted a common scheme or single course of conduct. This defendant had no prior criminal record and there was no showing that she is a grave risk to the community or that public safety requires consecutive sentences. See State v. Armstead, supra. Therefore, pursuant to the relevant law, she should have been sentéhced to concurrent, rather than consecutive, sentences. The reasons for imposing the sentences were quite lengthy; however, as stated above, the trial court did not state adequate reasons to justify the imposition of consecutive sentences in this case. Moreover, we find that the imposition of consecutive sentences, which amount to an aggregate 60-year sentence, without reasons, 119is out of proportion to the offenses and imposes a purposeless and needless infliction of pain and suffering to this defendant. Consequently, we-vacate these sentences and remand this case to the trial court for resentencing in accordance with this opinion.
ERROR PATENT
Our review of this record has revealed one error patent. The trial court advised the defendant of the time within, which to apply for post-conviction relief, pursuant to LSA-C.Cr.P. art. 930.8,. by advising her that she had two years from the date her convictions became final to seek pqst-con-viction relief. The correct time period for the defendant to seek post-conviction relief is two years from the date her convictions *207 and sentences become final. We hereby advise the defendant that she has two years from the date her convictions and sentences become final to apply for post-conviction relief.
CONCLUSION
For the foregoing reasons, the convictions of the defendant are affirmed. The sentences of the defendant are vacated and the case is remanded to the trial court for resentencing in accordance with this opinion.
CONVICTIONS AFFIRMED; SENTENCES VACATED;
REMANDED FOR RESENTENCING.

. In accordance with LSA-R.S. 46:1844(W), the victims will be referred to by their initials. In this opinion, the female twin will be referred to as '-‘J.B.-l” and the’male twin will be referred to as "J.B.-2.”

. The defendant had a 17-month-old toddler and one-month-old twins.

. The twins were born on March 31, 2013.

. Based on comments made by the trial court, on March 11, 2015, Williams approached the trial judge and expressed concerns about the matter and stated that he was "going to need some time to address” those concerns. The trial court stated that he instructed Williams tó “move,” explaining-that the court’meant that he wanted Williams to file a motion. Thereafter, the assistant district attorney stated that Williams came to her office on March 11, 2015, to review the state’s file, apparently to prepare for the hearing scheduled for the following day.

. An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance, so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App.2d Cir,2/28/07), 953 So.2d 890, writ denied, 2007-0805 (La.3/28/08), 978 So.2d 297.
The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with LSA-C.Cr.P. art. 894.1. State v. Landos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,350 (La.App.2d Cir,8/13/08), 989 So.2d 267. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La. 1981); State v. Ates, 43,327 (La.App.2d Cir.8/13/08), 989 So.2d 259, writ denied, 2008-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App.2d Cir. 12/13/06), 945 So.2d 277, writ denied, 2007-0144 (La.9/-28/07), 964 So.2d 351.
Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. Art. I, § 20, if it is grossly out of proportion to the seriousness of the offense' dr nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623, So.2d 1276 (La. 1993); State v. Bonanno, 384 So.2d 355 (La. 1980). A sentence is considered grossly disproportionate if,' when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La. 1/15/02), 805 So.2d 166; State v. Robinson, 40,983 (La.App.2d Cir. 1/24/07), 948 So.2d 379.
, The trial court is given wide discretion in the imposition of sentences within the statutory limits. Such a sentence will not be set aside as excessive absent a manifest abuse of that discretion. State v. Williams, 2003-3514 (La.12/13/04), 893 So.2d 7; State v. Thompson, 2002-0333 (La.4/9/03), 842 So.2d 330; State v. Diaz, 46,750 (La.App.2d Cir. 12/14/11), 81 So.3d 228, On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Williams, supra; State v. Free, 46,894 (La. App.2d Cir. 1/25/12); 86 So.3d 29.

. On remand, the trial court sentenced the defendant to serve five years on two counts, to run consecutively, and sentenced her to serve five years on the third count, to run consecutively to the sentences for counts one and two, The court then suspendéd the sentence imposed on count three, and ordered that the defendant be placed on five years’ active supervised probation upon her release from prison. On appeal, the appellate court vacated the sentences and remanded the matter "for resentencing as set forth in this court’s prior opinion with the maximum consecutive sentence not to exceed ten years at hard labor[.]” State v. Wallace, 2013-862 (La.App. 3d Cir.2/12/14), 153 So.3d 1040.

. On remand, the trial court imposed the original sentence, stating:
The facts of this case persuade me after reconsideration that it is not one course of conduct when it involves different people over that period of time and under the particular circumstances and the testimony that I heard and found credible and be *206 lieved and that was the basis for this decision. I remain persuaded that consecutive sentences are appropriate in this case. I leave it for the appeal courts and writs to the Supreme Court to tell me otherwise.
Once again, the appellate court vacated the sentences and remanded the matter "to be assigned to another judge in the 16th Judicial District Court for resentencing.” The Court instructed the resentencing judge to "sentence the Defendant to concurrent sentences as instructed by this courtf.]” State v. Ste. Marie, 2001-1253 (La.App. 3d Cir.4/10/02), 824 So.2d 358, writ denied, 2002-1117 (La. 12/19/02), 835 So.2d 1288 (the writ denial was based upon. the state’s failure to seek review of the previous appellate court ruling).