569 So.2d 627 (1990)
STATE of Louisiana, Appellee,
v.
Cindy D. CATHEY, Appellant.
No. 21880-KA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1990.
*629 Wellborn Jack, Jr., Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Paul J. Carmouche, Dist. Atty., Gay C. Gaskins, Asst. Dist. Atty., Shreveport, for appellee.
Before NORRIS, LINDSAY and HIGHTOWER, JJ.
NORRIS, Judge.
The defendant, Cindy D. Cathey, was charged by bill of information with three counts of distribution of Schedule II Controlled Dangerous Substances (CDS). Counts 1 and 3 charged her with distribution of methamphetamine, and count 2 with distribution of cocaine. LSA-R.S. 40:967 A(1). Following a trial, the jury found Cathey guilty as charged. The events occurred in September, 1987 and at that time the sentencing range on counts 1 and 3 (methamphetamine) was 0-10 years and a maximum fine of $15,000. R.S. 40:967 B(2). As for count 2, cocaine is classified as a narcotic drug and carries a sentencing range of 5-30 years at hard labor and a maximum fine of $15,000. R.S. 40:961(23); R.S. 40:967 B(1). The trial court sentenced the defendant to serve five years at hard labor and $5,000 fines on counts 1 and 2; it further provided a term of four years at hard labor and a $5,000 fine on count 3. All sentences were to run consecutively. The total sentence was 14 years at hard labor and fines totalling $15,000. She now appeals challenging her sentence as excessive. We vacate the sentence and remand with instructions.
On three separate occasions within a two-week period Cathey, age 17, distributed drugs to undercover Shreveport Narcotics Officers. On September 2, 1987, a meeting was set up by a confidential informant for Cathey to sell one gram of methamphetamine to an undercover officer. The three met at Andrews Grocery on the corner of St. Vincent and State Streets in Shreveport at approximately 9:05 p.m. Cathey told them that she could not get the drugs at that time, but that she would have access to the drugs later that night. She instructed them to meet her at a church parking lot on the corner of Fairfield and 61st Streets. They went to the church parking lot at 10:00 p.m. and met Cathey and a Lisa A. Burnley who were there waiting. The undercover officer gave Cathey $100 in marked money. She took the money and went to pick up the drugs from another location while Burnley waited with the undercover officer and the confidential informant in their car. Cathey brought back one gram of methamphetamine and gave it to the undercover officer. In the course of the sale Burnley gave the undercover officer a telephone number and told him to contact either of them for his future drug needs.
On September 4, 1987, the undercover officer called Cathey to set up a meeting to purchase more methamphetamine. She told him that she could not get the methamphetamine right then, but that she could get cocaine. The undercover officer asked if she could get more than one gram of it. After she made a telephone call to her source, she told him she could get two grams of cocaine for $200. She met with two undercover officers at around 12:15 a.m. the next morning. Cathey told the undercover officers that her source was not yet at home and they would have to wait until he called. The source called at approximately 12:48 a.m. and the undercover officers then paid her $200 in marked bills. She left to pick up the drugs and later returned, accompanied by Charley Ferlito, Jr., with two grams of cocaine. She gave the cocaine to the undercover officers.
On September 15, 1987, almost two weeks later, the undercover officer made another call to Cathey, again to set up a drug deal. He asked for an "8-ball," 1/8 ounce of methamphetamine. She said it would cost $300. The meeting occurred at 12:50 p.m. that evening, again at the corner *630 of St. Vincent and State Streets. She got in the undercover officer's car and traded the methamphetamine for the $300. She told him during the transaction to contact her in the future and not Lisa Burnley because she could get the drugs for him faster and with less hassle.
On November 6, 1987, Cathey and her codefendants, Burnley and Ferlito, were arrested. Both codefendants pled guilty to possession of Schedule II CDS for their activities in the transactions. Each received sentences of four years at hard labor, suspended, subject to four years supervised probation with special conditions. After Cathey's one-day trial, she was convicted on all three counts. As noted, her aggregate sentence was 14 years at hard labor and $15,000 in fines.
The test of excessiveness is two-tiered. First, while a trial court need not articulate every aggravating and mitigating factor of LSA-C.Cr.P. art. 894.1, the record must show that the district court took cognizance of these guidelines in particularizing the sentence to the defendant. State v. Smith, 433 So.2d 688 (La.1983). The articulation of the factual basis for a sentence is the goal of art. 894.1, not rigid or mechanical compliance with its provisions. Even if the district court does not fully comply with the article, remand is unnecessary as long as the record clearly shows an adequate factual basis for the sentence imposed. State v. Lanclos, 419 So.2d 475 (La.1982). The important factors to consider include the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied 521 So.2d 1143 (La.1988).
The sentencing colloquy presents difficulties. Even though Cathey had no prior history of criminal activity or delinquency, the trial court concluded, without stating a factual basis, that her criminal conduct was the result of circumstances likely to reoccur and that her character and attitude did not indicate that she could stay free from crime if placed on supervised probation. It noted the suspended sentences of her codefendants but indicated that made "no difference." It further noted that the PSI indicated she had been in the drug culture since dropping out of school at age 16; however, it ignored her apparent lack of involvement with law enforcement subsequent to her arrest in September 1987 until sentencing in September 1989. The court stated that she had no "credible" work record, yet dismissed the fact that she was only 19 years old at the time of sentencing and was employed both at the time of these offenses and afterward. The trial court failed to articulate an adequate factual basis to particularize the sentence imposed to the defendant and therefore did not adequately comply with art. 894.1. Smith, supra; Lanclos, supra.
The second tier is constitutional excessiveness. A sentence violates LSA-Const. Art. 1, § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than a needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La. 1980). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, the sentence shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985). Important considerations include the nature of the offense and the offender (i.e., the harm caused or threatened to the victim as well as the culpability and character of the offender) and comparison of defendant's sentence with those imposed upon others for a similar crime. State v. Lathers, 444 So.2d 96 (La.1983); State v. Telsee, 425 So.2d 1251 (La.1983). The trial court has wide discretion in imposing a sentence within statutory limits and such a sentence should not be set aside as excessive absent a manifest abuse of discretion. Lanclos, supra. However, this discretion is not unbridled. Even though a sentence is within statutory limits, it may nevertheless be constitutionally excessive by reason of its length or because it specifies confinement rather than less onerous sentencing alternatives. State v. Walker, *631 414 So.2d 1245 (La.1982); State v. Kelly, 469 So.2d 316 (La.App.2d Cir.1985).
In Bonanno, supra, the defendant, a first-time offender, distributed one pound of cocaine valued at $22,000 wholesale. It was found that the defendant intended to develop a large-scale cocaine market in the Shreveport area. The court considered the size of the transaction and found that 21 years at hard labor was not an excessive sentence. In State v. Gordon, 444 So.2d 1188 (La.1984), the defendant, 29 years of age, was charged with three counts of distribution of cocaine and one count of conspiracy to distribute cocaine. He pled guilty to two of the distribution counts and the one conspiracy count. His first sale involved one ounce of cocaine for $2,400. The second involved three ounces of cocaine for $7,200. By the time of his arrest, he had been addicted to cocaine for about two years. He had no criminal record. It was determined that he was not a large-scale distributor of drugs and that he only made the sales to support his own habit. He received a 20-year suspended sentence at hard labor and was placed on active supervised probation for five years with special provisions. His probation was revoked after he failed a drug test. He then appealed (out of time) the 20-year sentence as excessive. The 20-year sentence, even though suspended, was found to be excessive.
In State v. Forshee, 395 So.2d 742 (La. 1981) the 22-year old defendant was sentenced to three years at hard labor and a $7,500 fine on one count of possession with intent to distribute Preludin. The trial court based the sentence partially upon the finding of an unstable work record. The supreme court held the trial court erred in this finding; the defendant's intermittent employment was not unusual for a young person who was trying to support himself while furthering his education. The sentence was found excessive.
In Kelly, supra, the defendant was sentenced to three years at hard labor for selling ten capsules of amphetamine for $30. She had no prior record and was 32 years old. The primary factor relied on by the trial court was the seriousness of the offense of distribution of a controlled dangerous substance. This court conceded that the seriousness of the offense is only one of the factors to be considered. We further found that inadequate weight was given to the other mitigating factors and reversed the sentence.
In State v. Tilley, 400 So.2d 1363 (La. 1981) the defendant, age 18, was found guilty of distribution of cocaine. A first time offender, he sold six packages of cocaine to an undercover officer. After trial on the merits, the defendant was sentenced to 21 years at hard labor and a $10,000 fine. The supreme court reversed the sentence as excessive, noting that in light of the offender's youth, even the statutory minimum of five years unsuspended may be a harsh sentence.
In State v. Strickland, 486 So.2d 1015 (La.App.2d Cir.1986) the defendant pled guilty to possession of cocaine with intent to distribute. She sold approximately two grams of cocaine to an undercover officer for $250. She was 24 years old and found to not be a large-scale drug dealer. She was unemployed because she was pregnant. She had no prior criminal record. She was released on bail for almost two years after arrest without any criminal incident. The trial court sentenced her to 20 years at hard labor. This court found the sentence excessive.
Finally, in State v. Powers, 569 So.2d 624 (La.App.2d Cir.1990), handed down today, the defendant, age 26, pled guilty to distribution of cocaine and was sentenced to 25 years at hard labor. He sold one ounce of cocaine to an undercover police officer for $950. This court found that the defendant was functioning primarily as a "go-between." He had a prior misdemeanor conviction for what the PSI labelled "assault, battery, and great bodily injury with a deadly weapon," in California in 1986. He was charged with attempted murder in 1988. A jury found him not guilty of that offense but deadlocked on reaching a verdict as to a lesser included offense causing a mistrial. He had charges pending at the time of sentencing *632 for possession of cocaine with intent to distribute and possession of a firearm during the commission of a drug felony. He had a family and was found to have been employed at the time of his arrest. This court found an absence of an indication that he was a large-scale drug distributor and, under the circumstances presented, found the sentence to be excessive.
Unless there are specific reasons for a longer sentence, concurrent sentences rather than consecutive sentences are appropriate for convictions arising out of a single course of conduct, at least for a defendant with no prior criminal record and in the absence of a showing that public safety requires a longer sentence. LSA-C. Cr.P. art. 883; State v. Armstead, 432 So.2d 837 (La.1983). A judgment directing such consecutive sentences requires particular justification. State v. Lighten, 516 So.2d 1266 (La.App.2d Cir.1987). While none of the individual sentences imposed may be excessive, the imposition of consecutive sentences may be so grossly disproportionate to the crimes committed as to shock our sense of justice. State v. Cann, 471 So.2d 701 (La.1985). The consecutive sentences did not receive particularized justification by the trial court as stated previously. Lighten, supra. The defendant was 17 years of age when the incidents occurred in September 1987. She is therefore classified as a youthful offender. While her work record may not have been lengthy because of her age, the PSI reports that she was working at the time of these offenses and afterward. Forshee, supra. She is a first time criminal offender. Despite the trial court's indication that she was part of the "drug culture," Cathey was released on bail from September 1987, following her arrest until the trial in May 1989 without criminal incident. There is no indication from the record or the PSI that she continued to use or deal in drugs after her arrest; therefore, the trial court erred in stating that she had been in the drug culture for three years. The trial court recognized that she was not a large-scale drug dealer, even noting that she was likely only a "go-between" in the drug trade. All three transactions were within a two-week period and the quantity of drugs as well as the monetary amount involved in each transaction was small. These factors overwhelmingly militate in favor of a lighter aggregate sentence than Cathey received.
Cathey's codefendants, Ferlito, age 29 and Burnley, age 23, pled guilty for their involvement in the transactions to the charge of possession of Schedule II CDS and received suspended sentences of four years with supervised probation. While it is true that codefendants do not have to receive the same sentence, it is a factor to be considered. Lathers, supra; Telsee, supra. The record indicates that either Burnley or Ferlito were with Cathey at the point of distribution on two of the drug transfers. Though Cathey elected not to plead guilty, it is noteworthy that her entire trial was completed in one day and cannot be considered a major burden on the criminal justice system. She nevertheless received a total of 14 years at hard labor and $15,000 in fines. Under the circumstances of this case, consecutive sentences of five years at hard labor and $5,000 fines on counts 1 and 2, plus another consecutive sentence of four years at hard labor and a $5,000 fine on count 3 shock our sense of justice. In addition, we find the trial court's articulation of the provisions of art. 894.1 both rigid and mechanical. Lanclos, supra. The aggregate sentence of 14 years at hard labor and a $15,000 fine will be reversed. Concurrent sentences are more appropriate under the circumstances.
The circumstances indicate that Cathey's total imprisonment in the instant case should not exceed seven years. Although we recognize that she obtained counsel for her appeal through her mother's efforts without state assistance, she was determined an indigent and appointed counsel throughout her trial proceedings as well as receiving a transcript for her appeal at state expense. Therefore, we conclude that her total fine should not exceed $1,000. Finally, we recommend that the trial court, on remand, consider suspending all or a portion of Cathey's sentence utilizing supervised probation with appropriate conditions *633 such as a term of incarceration, completion of a drug rehabilitation program and no association with codefendants Burnley or Ferlito as conditions. LSA-C.Cr.P. art. 893 A.
We have reviewed the record for errors patent and found none. LSA-C.Cr.P. art. 920(2).
For the foregoing reasons the sentence imposed is vacated and remanded for resentencing in accord with the views expressed herein.
SENTENCE VACATED AND CASE REMANDED WITH INSTRUCTIONS.
HIGHTOWER, J., concurs in part, dissents in part and assigns reasons.
HIGHTOWER, Judge, concurring in part and dissenting in part.
I concur with the observation of the majority that the sentencing judge failed to particularize his justification for imposing consecutive sentences. Accordingly, remand to allow the lower court the opportunity to do so is appropriate.
However, I respectfully disagree with the conclusion that the punishment for defendant, a "go-between" who volunteered continuing services and the ability to sell larger quantities of drugs, should be limited to seven years imprisonment, all or a portion of which is recommended suspended, and a $1000 fine. This offender, although youthful, exhibited the sophistication of one very familiar with the drug trade. Until the lower court is given the opportunity to articulate reasons for imposing consecutive sentences, instructions imposing a sentencing cap are premature.