NOT DESIGNATED FOR PUBLICATION

**STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT**

**KA 23-221**

**STATE OF LOUISIANA**

**VERSUS**

**ALLEN CLAYTON FULKS**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 95794
HONORABLE SCOTT WESTERCHIL, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**GUY E. BRADBERRY
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Jonathan W. Perry, Sharon Darville Wilson, and Guy E. Bradberry, Judges.

**CONVICTIONS AND SENTENCES AFFIRMED;
MOTION TO WITHDRAW GRANTED.**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**P.O. Box 6547**
**Lake Charles, LA 70606-6547**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Allen Clayton Fulks**

**Terry W. Lambright**
**District Attorney**
**Thirtieth Judicial District Court**
**P.O. Box 1188**
**Leesville, LA 71496**
**(337) 239-2008**
**COUNSEL FOR:**
    **State of Louisiana**

**BRADBERRY, Judge.**

On September 17, 2020, the State filed a bill of information charging Defendant, Allen Clayton Fulks, with three counts of second degree cruelty to a juvenile, all violations of La.R.S. 14:93.2.3(A)(1) and La.R.S. 14:24. On October 24, 2022, jury selection began. Evidence was adduced during the next three days–October 25, 26, and 27–concluding on the afternoon of October 27, 2022, with the jury returning verdicts of guilty on each count.

During Defendant's sentencing hearing on December 20, 2022, the court imposed three consecutive sentences of fifteen years at hard labor with credit for time served, the sentences totaling forty-five years, to which Defendant's counsel orally objected. He filed a Motion for Appeal and Designation of the Record that same day. The following day, December 21, 2022, the court granted the appeal, appointing the Louisiana Appellate Project (LAP) to represent Defendant.

Nonetheless, in the instant appeal, counsel from the LAP seeks permission from this court to withdraw pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967), and *State v. Benjamin*, 573 So.2d 528 (La.App. 4 Cir. 1990), having found no error that would warrant setting aside the convictions or the sentences imposed upon Defendant. Defendant had until September 5, 2023, to file a pro se brief and did not. For the following reasons, we affirm the second degree cruelty to a juvenile convictions and sentences and grant appellate counsel's motion to withdraw.

# FACTS

In mid-February of 2020, Defendant and his girlfriend, Stacy Tharpe, agreed to take in a seven-year-old girl, referred to as E.J.,[1] at the request of the girl's mother. They informed Officer Robert Green of the Rosepine Police Department (RPD) that E.J. was in their care. Throughout the weeks, Officer Green and others from the RPD occasionally visited Defendant's residence to check on E.J.'s wellbeing. On June 20, 2020, Officer Dylan Bergeron of the RPD received a report of possible child abuse occurring at Defendant's residence, but it was not until the evening of July 6, 2020, that Officer Green visited the residence to check in on E.J. once again.

He was met on the front porch by Defendant and Dakota Singletary. Defendant and Mr. Singletary told Officer Green that E.J. was away in Texas on vacation with Defendant's mother and father. Officer Green, after expressing his wish to see E.J. once she returned, departed without ever entering the home. A few hours later, Defendant and Singletary decided to go for a drive and had a car accident, leading Officer Green, upon learning of the accident, to go to the crash site and assist Vernon Parish Sheriff Deputy Jacob Durrett and State Police Trooper Peter Smith, who were already at the scene. It was at the scene that Officer Green saw Defendant's mother and father. They were there to make sure that their son was okay. Naturally, he asked the vacationing parents how E.J. was enjoying her time with them in Texas, to which they informed him that he was mistaken: E.J. had not been with them at all.

In truth she was still at Defendant's residence, hiding beneath her bed. For possibly two months, she was slapped, punched, kicked, thrown, and starved. She

---

[1] Pursuant to La.R.S. 46:1844(W), the victim's initials are used to protect her identity.

had been lashed by a belt, choked unconscious, force-fed hot sauce, submerged in ice baths, kneed in the vagina, zip tied, and jerked by the hair. When visitors came to the house, E.J. was forced to remain either beneath the bunk bed or inside the air vent for so long she had to defecate in the diaper she had been forced to wear. Because of the abuse, E.J. suffered serious bodily injury. The examining nurse needed extra paper to list every harm done to E.J.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

## *ANDERS* ANALYSIS

As stated previously, Defendant's appellate counsel has filed a brief pursuant to *Anders*, 386 U.S. 738, alleging the record contains no non-frivolous issues for appeal and requesting this court grant her accompanying motion to withdraw. In *Benjamin*, 573 So.2d at 531, the fourth circuit explained the *Anders* analysis:

> When appointed counsel has filed a brief indicating that no non-frivolous issues and no ruling arguably supporting an appeal were found after a conscientious review of the record, *Anders* requires that counsel move to withdraw. This motion will not be acted on until this court performs a thorough independent review of the record after providing the appellant an opportunity to file a brief in his or her own behalf. This court's review of the record will consist of (1) a review of the bill of information or indictment to insure the defendant was properly charged; (2) a review of all minute entries to insure the defendant was present at all crucial stages of the proceedings, the jury composition and verdict were correct and the sentence is legal; (3) a review of all pleadings in the record; (4) a review of the jury sheets; and (5) a review of all transcripts to determine if any ruling provides an arguable basis for appeal. Under C.Cr.P. art. 914.1(D) this Court will order that the appeal record be supplemented with pleadings, minute entries and transcripts when the record filed in this Court is not sufficient to perform this review.

While it is not necessary for Defendant's counsel to "catalog tediously every meritless objection made at trial or by way of pre-trial motions with a labored explanation of why the objections all lack merit[,]" counsel's *Anders* brief must "'assure the court that the indigent defendant's constitutional rights have not been violated.'" *State v. Jyles*, 96-2669, p. 2 (La. 12/12/97), 704 So.2d 241, 241 (citing *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308 (1983); quoting *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 442 108 S.Ct. 1895, 1903 (1988)). Counsel must fully discuss and analyze the trial record and consider "whether any ruling made by the trial court, subject to the contemporaneous objection rule, had a significant, adverse impact on shaping the evidence presented to the jury for its consideration." *Jyles*, 704 So.2d at 241 (citing *U.S. v. Pippen*, 115 F.3d 422, 426 (7th Cir. 1997)). Therefore, counsel's *Anders* brief must review the procedural history and the evidence presented at trial and provide "a detailed and reviewable assessment for both the defendant and the appellate court of whether the appeal is worth pursuing in the first place." *State v. Mouton*, 95-981, p. 2 (La. 4/28/95), 653 So.2d 1176, 1177 (per curiam).

Pursuant to *Anders*, 386 U.S. 738, and *Jyles*, 704 So.2d 241, Defendant's appellate counsel filed a brief outlining her assessment of the appellate record. We will discuss each of the issues discussed in appellate counsel's brief.

*Sufficiency of the Evidence*

Appellate counsel asserts the evidence introduced at trial was sufficient to find Defendant guilty of all counts. The analysis for insufficiency of the evidence is well settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier

4

of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the Jackson standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Defendant was convicted of three counts of second degree cruelty to a juvenile. It is defined by La.R.S. 14:93.2.3(A)(1), which states, "Second degree cruelty to juveniles is the intentional or criminally negligent mistreatment or neglect by anyone over the age of seventeen to any child under the age of seventeen which causes serious bodily injury or neurological impairment to that child." Furthermore, La.R.S. 14:24, regarding principles, states, "All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."

In addressing whether the State satisfied its burden of proving the elements beyond a reasonable doubt, we look to the testimony and evidence admitted at trial. As noted by this court in *State v. F.B.A.*, 07-1526, p. 2 (La.App. 3 Cir. 5/28/08), 983 So.2d 1006, 1009 (alteration in original), *writ denied*, 08-1464 (La. 3/27/09), 5 So.3d 138:

> Furthermore, the testimony of a single witness is sufficient to support a conviction "[i]n the absence of internal contradiction or irreconcilable conflicts with physical evidence." *State v. Dixon,* 04-1019, p. 12 (La.App. 5 Cir. 3/15/05), 900 So.2d 929, 936. The trier of

fact may accept or reject the testimony of any witness, and the determination of the credibility of that witness, in whole or in part, is left to its sound discretion and "will not be re-weighed on appeal." *Id.* at 936.

In the instant case, appellate counsel asserts that the multiple witness testimonies, the statements to the police from Defendant, Stacy Tharpe, and Dakota Singletary, as well as the body-cam footage from the officers involved, the prison calls between Defendant and the mother of his child, and the derogatory and threatening Facebook messages of Singletary and Tharpe regarding E.J. established each element of each charge against Defendant, rightly proving him guilty. We agree with appellate counsel's assertion.

At trial the State offered testimony of the forensic interviewer who interviewed E.J. on July 13, 2020. For much of the interview, E.J. did not directly implicate Defendant. She spoke of how Singletary beat her, choked her, and put her in ice baths. She kept saying "they." When asked who "they" were, she would just say Singletary. However, as the interview continued, E.J. began to implicate Defendant, stating that he would hit her in the "cooter" when he was angry and that both Defendant and Singletary would choke and punch her in the stomach.

The two co-defendants, Tharpe and Singletary, both of whom had already pled guilty to one count of second degree cruelty to a juvenile, consequently rendering their other two counts dismissed, testified at Defendant's trial and provided the following facts.

Tharpe testified that during the time E.J. resided at the house, she and Defendant argued daily about everything, and that she, Defendant, and Singletary would use meth daily. Defendant and Singletary were constantly in conflict. The tension would cause Defendant to become controlling and abusive toward E.J., and

he and Singletary would hit E.J. and throw things at her. Defendant would also hit her with a belt on her back, legs, and stomach. Around June 2020, Defendant placed E.J. in ice baths in an attempt to heal her bruises, and he had on at least three occasions zip tied her hands and feet.

Dakota Singletary testified he and Defendant would go to bars, drink, and do drugs together. Like Tharpe, he testified that they did meth almost every day. By the end of June 2020, the abuse of E.J. started, and he had seen Defendant punch, kick, choke, and beat E.J. with a belt. Singletary testified that he himself put E.J. in ice baths, the idea being Defendant's. Further, he testified that he was with Defendant when the officers went to the house to check on E.J. on July 6, 2020. Once the officers left, Defendant and Singletary fought, during which Singletary told Defendant to tell his father everything that was happening with E.J.

Brenda Willis, a family nurse practitioner and a certified sexual assault nurse examiner (SANE), testified to her July 7, 2020 SANE examination of E.J. The detailed report of which was admitted into evidence. She testified that E.J. had been abused over a considerable period. During the examination, E.J. stated "they" kicked and punched her in the "cootie." E.J. never referenced Defendant by name, however. Instead, E.J. identified Singletary, and she often referred to "them" and "they."

Lastly, Detective David Vance, who had been assigned to the case, testified that during an interview, Defendant admitted to whipping E.J. with a belt and hitting her in the face and head. The video of the interview was admitted into evidence. The detective spoke of the jail calls he had listened to between Defendant and the mother of his child, during which Defendant stated that what he did to E.J. was done to please Stacy Tharpe. Facebook messages given to the detective showed that

7

Tharpe spoke derogatorily about E.J. and that Singletary exclaimed that he would cut the little girl.

Reviewing the testimony and evidence introduced at trial, there seems to be no apparent contradiction between them other than E.J.'s initial hesitancy to implicate Defendant and his girlfriend, Tharpe, during the forensic interview. Eventually, however, Defendant was directly implicated by E.J., by Tharpe, by Singletary, and by his own admission. Therefore, we agree with appellate counsel's assertion that the evidence was sufficient to prove Defendant's guilt on all charges.

*Evidence of Insufficiency of Counsel*

Defendant's attorney failed to timely file two motions to suppress evidence, and, though he objected to Defendant's sentence, he never filed a motion to reconsider sentence. Despite these errors, appellate counsel asserts that they would not satisfy the prejudice prong of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).

The fourth circuit discussed the burden of proving ineffective assistance of counsel as follows:

> Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. *State v. Prudholm,* 446 So.2d 729 (La.1984); *State v. Johnson*, 557 So.2d 1030 (La.App. 4 Cir.1990); *State v. Reed,* 483 So.2d 1278 (La.App. 4 Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. *State v. Seiss*, 428 So.2d 444 (La.1983); *State v. Ratcliff*, 416 So.2d 528 (La.1982); *State v. Garland*, 482 So.2d 133 (La.App. 4 Cir.1986); *State v. Landry*, 499 So.2d 1320 (La.App. 4 Cir.1986).
>
> The defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Fuller,* 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that he was prejudiced by the deficiency. Counsel's

performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. *Strickland, supra*, 466 U.S. at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland, supra*, 466 U.S. at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. *State v. Sparrow,* 612 So.2d 191, 199 (La.App. 4 Cir.1992).

This Court has recognized that if an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel." *State v. Bienemy*, 483 So.2d 1105 (La.App. 4 Cir.1986). Moreover, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." *State v. Brooks*, 505 So.2d 714, 724 (La.1987).

*State v. Griffin*, 02-1703, pp. 8–10 (La.App. 4 Cir. 1/15/03), 838 So.2d 34, 40, *writ denied*, 03-809 (La. 11/7/03), 857 So.2d 515.

The two motions to suppress which were rejected for their untimeliness concerned two taped interviews, one being the victim's made during her forensic interview at the Child Advocacy Center (CAC), the other being Defendant's first statement to law enforcement the day he was arrested.

The defense objected to the victim's CAC statement, arguing it did not satisfy the requirements of La.R.S. 15:440.4(A), which states:

A videotape of a protected person may be offered in evidence either for or against a defendant. To render such a videotape competent evidence, it must be satisfactorily proved:

(1) That such electronic recording was voluntarily made by the protected person;

(2) That no relative of the protected person was present in the room where the recording was made;

9

(3) That such recording was not made of answers to interrogatories calculated to lead the protected person to make any particular statement;

(4) That the recording is accurate, has not been altered, and reflects what the protected person said;

(5) That the taking of the protected person's statement was supervised by a physician, a social worker, a law enforcement officer, a licensed psychologist, a medical psychologist, a licensed professional counselor, or an authorized representative of the Department of Children and Family Services.

During the days after Defendant's arrest, Deputy Coroner Sharon Green bought E.J. several fast-food meals, had on several occasions brought E.J. to her home to swim, and she had treated her to a spa day. Ms. Green was also the one who brought E.J. to her interview at CAC. Consequently, counsel argued that the friendly relations between Ms. Green and the victim had coerced the child to tell law enforcement what they wanted to hear.

As for Defendant's statements, counsel argued Defendant had been beaten and mistreated after being taken into custody, making his statements involuntary.

Although the two motions were denied for untimeliness, the issues they called forth were still addressed by the court. The court reviewed the videos during a hearing on pre-trial motions when the State sought to establish admissibility of the CAC video and Defendant's statements. The court noted the reasons for finding the State had sufficiently proven that the contested recording satisfied La.R.S. 15:440.4, and Defendant's statements were freely and voluntarily made. Furthermore, throughout the trial, counsel had the opportunity to object to the admission of the CAC interview and video and Defendant's statements, but he never did.

10

*Excessive Sentencing*

Whoever commits the crime of second degree cruelty to juveniles shall be imprisoned at hard labor for not more than forty years. La.R.S. 14:93.2.3(C).

Appellant counsel claims that, although consecutive sentences are generally frowned upon when the crimes involved the same course of criminal conduct, Defendant's three lower-range consecutive sentences of fifteen years (a forty-five-year total) are not constitutionally excessive, for the trial court gave reasonable and specific reasons for its imposition, and it recognized mitigating factors, such as Defendant's relatively young age, his lack of prior criminal history, and his history of mental health and substance abuse; the particular facts, moreover, are sufficiently shocking to warrant consecutive sentences.

Louisiana courts have laid out the following guidelines regarding excessive sentence review:

> Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:
>
>> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might

11

have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Soileau*, 13-770, 13-771, pp. 4–5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005–06 (alteration in original), *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261.

Regarding the imposition of consecutive sentences, La.Code Crim.P. art. 883 provides, in pertinent part:

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently.

In *State v. Simpson*, 50,334, pp. 7–8 (La.App. 2 Cir. 1/13/16), 186 So.3d 195, 200–01, the second circuit summarized the law with regard to concurrent and consecutive sentences:

> Concurrent sentences arising out of a single course of conduct are not mandatory. *State v. Parker,* 42,311 (La.App. 2 Cir.8/15/07), 963 So.2d 497, *writ denied,* 2007-2053 (La. 3/7/08), 977 So.2d 896, and consecutive sentences under those circumstances are not necessarily excessive. *State v. Williams,* 445 So.2d 1171 (La.1984). Among the factors to be considered are the defendant's criminal history, *State v. Ortego,* 382 So.2d 921 (La.1980), *cert. denied,* 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980); *State v. Jacobs,* 493 So.2d 766 (La.App. 2 Cir.1986); the gravity or dangerousness of the offense, *State v. Adams,* 493 So.2d 835 (La.App. 2 Cir. 1986), *writ denied,* 496 So.2d 355 (La.1986); the viciousness of the crimes, *State v. Clark,* 499 So.2d 332 (La.App. 4 Cir.1986); the harm done to the victims, *State v. Lewis,* 430 So.2d 1286 (La.App. 1 Cir.1983), *writ denied,* 435 So.2d 433 (La.1983); whether the defendant constitutes an unusual risk of danger to the public, *State v. Jett,* 419 So.2d 844 (La.1982); the potential for the defendant's rehabilitation, *State v. Sherer,* 437 So.2d 276 (La.1983); *State v. Lighten,* 516 So.2d 1266 (La.App. 2 Cir. 1987); and whether the defendant has received a

> benefit from a plea bargain. *State v. Jett, supra*; *State v. Adams, supra*.
>
> When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. *State v. Johnson, supra*; *State v. Boudreaux*, 41,660 (La.App. 2 Cir. 12/13/06), 945 So.2d 898. The failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences. See *State v. Boudreaux, supra.*
>
> Unless there are specific reasons for a longer sentence, concurrent sentences rather than consecutive sentences are appropriate for convictions arising out of a single course of conduct, at least for a defendant with no prior criminal record and in the absence of a showing that public safety requires a longer sentence. *State v. Armstead*, 432 So.2d 837 (La.1983); *State v. Cathey*, 569 So.2d 627 (La.App. 2d Cir.1990).

As this court noted in *State v. Bethley*, 12-853, p. 11 (La.App. 3 Cir. 2/6/13), 107 So.3d 841, 850, "[t]he imposition of consecutive sentences, however, requires particular justification beyond the standard sentencing guidelines, justification which must be articulated by the trial court at sentencing."

Also, in *State v. Walker*, 00-3200, p. 1 (La. 10/12/01), 799 So.2d 461, 461–62, the supreme court noted:

> Although La.C.Cr.P. art. 883 favors imposition of concurrent sentences for crimes committed as part of the same transaction or series of transactions, a trial court retains the discretion to impose consecutive penalties in cases in which the offender's past criminality or other circumstances in his background or in the commission of the crimes justify treating him as a grave risk to the safety of the community.

In the instant case, the trial court specifically stated its reasons for imposing consecutive sentences on Defendant:

The gravity and dangerousness of this crime. The child is lucky to be alive today.

The viciousness of this crime . . . .

The everlasting harm to the victim.

Mr. Fulks poses a dangerous risk to this -- to the public -- of the citizens of Vernon Parish and the State of Louisiana. If he's gonna harm a seven-year-old child in this manner, there's no telling what he'd do to anyone else that lives and thrives in our community.

His lack of potential for rehabilitation due to his failure -- failure to take responsibility and lack of remorse is the fifth reason that I'm taking this matter up as a consecutive sentence, rather than concurrent.

The ongoing and continuous daily abuse sustained by the victim is another reason. This was not an isolated incident or day of abuse. This defendant could have been charged with many more counts of this same offense and a jury would have convicted him.

As the relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate, we agree with appellate counsel that Defendant's sentences are legal and not constitutionally excessive.

**CONCLUSION**

Pursuant to *Anders*, 386 U.S. 738, and *Jyles*, 704 So.2d 241, this court has performed a thorough review of the record, including pleadings, minute entries, the charging instrument, and the transcripts. Defendant was properly charged in the bill of information; he was present and represented by counsel at all crucial stages of the proceedings; the verdicts were correct; and he received a legal sentence for each conviction. This court has found no issues which would support an assignment of

error on appeal.  Accordingly, we affirm Defendant's convictions and sentences, and

we grant counsel's motion to withdraw.

**CONVICTIONS AND SENTENCES AFFIRMED. MOTION TO WITHDRAW GRANTED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.